Nos. 65546-4; 65734-3. En Banc.]
Argued March 10, 1998.     Decided June 4, 1998.

THE STATE OF WASHINGTON, *Respondent*, v. ROLAND ERIK RILES, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD LEE GHOLSTON, *Petitioner*.

---

Alexander and Sanders, JJ., dissent in part by separate opinion.

*Nielsen, Broman & Associates, P.L.L.C.*, by *Christopher H. Gibson* and *Jonathan T. Stier*, for petitioner Riles.

*Nielsen, Broman & Associates, P.L.L.C.*, by *Kelly V. Curtin*, for petitioner Gholston.

*Norm Maleng, Prosecuting Attorney,* and *James W. Leslie, Roger Davidheiser, Lisa N. O'Toole, Ann M. Foerschler,* and *Cynthia Gannett, Deputies,* for respondent.

SMITH, J. — In these consolidated cases Petitioners Roland Erik Riles and Richard Lee Gholston each seek review of decisions of the Court of Appeals, Division I, affirming decisions by the King County Superior Court which imposed conditions for mandatory post-release community placement under the Sentencing Reform Act of 1981, RCW chapter 9.94A. We affirm, but strike one condition from the order in each case.

## QUESTIONS PRESENTED

The primary question in both cases is whether the trial courts imposed improper conditions on Petitioners during their mandatory community placement upon their release from prison.

In answering that question we must determine (1)

whether the trial courts exceeded their authority by requiring Petitioners to submit to polygraph and plethysmograph testing during their period of community placement; (2) whether the conditions ordering Petitioner Roland Erik Riles to have no contact with children, avoid places where children congregate, and not frequent places where minors are known to congregate are unconstitutionally vague, and whether the "no contact" condition is also overbroad; (3) whether the condition ordering Petitioner Richard Lee Gholston to have no contact with any minor-age children is unconstitutionally vague and overbroad when the victim of his rape was an adult woman; and (4) whether the condition ordering Petitioner Gholston to make reasonable progress in mental health counseling or sexual deviancy therapy is without statutory authority and is unconstitutionally vague.

## STATEMENT OF FACTS

### Roland Erik Riles

On January 14, 1993, Petitioner Roland Erik Riles was convicted by a jury in the King County Superior Court of first degree child rape in violation of RCW 9A.44.073 for anally raping a six-year-old boy.[1] On March 12, 1993, the Honorable Ricardo S. Martinez sentenced him within the standard range to confinement for 102 months.[2] In addition, the court sentenced him to two years of community placement following his release from prison as required by RCW 9.94A.120(9)(b) under the Sentencing Reform Act of 1981 (SRA).[3] That provision states in relevant part:

> When a court sentences a person to a term of total confinement to the custody of the department of corrections for an of-

---

[1]Clerk's Papers at 1-3, 27. Petitioner does not challenge his conviction.

[2]*Id.* at 32.

[3]*Id.* at 34. This provision was codified as RCW 9.94A.120(8)(b) at the time of Petitioner Riles' sentencing. It was later recodified as 9.94A.120(9) with the addition of a new subsection in 9.94A.120. *See* LAWS OF 1995, ch. 108, § 3.

fense categorized as a sex offense committed on or after July 1, 1990, but before June 6, 1996, . . . *the court shall in addition to other terms of the sentence, sentence the offender to community placement for two years* or up to the period of earned early release awarded pursuant to RCW 9.94A.150(1) and (2), whichever is longer. . . . Unless a condition is waived by the court, the terms of community placement for offenders sentenced pursuant to this section shall include the following conditions:

(i) The offender shall report to and be available for contact with the assigned community corrections officer as directed;

(ii) The offender shall work at department of corrections-approved education, employment, and/or community service;

(iii) The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions;

(iv) An offender in community custody shall not unlawfully possess controlled substances;

(v) The offender shall pay supervision fees as determined by the department of corrections; and

(vi) The residence location and living arrangements are subject to the prior approval of the department of corrections during the period of community placement. . . .

(Emphasis added.) The trial court imposed those six mandatory conditions and imposed additional ones, including the following:

(6) *Have no contact w/victim or any minor-age children w/o approval of CCO and mental health treatment counselor*;

. . . .

(8) *submit to polygraph & plethysmograph testing upon request of therapist and/or CCO, at own expense*;

(9) hold no position of authority or trust involving children;

(10) *avoid places where children congregate*;

(11) do not initiate or prolong physical contact w/children for any reason;

(12) *do not frequent places where minors are known to*

*congregate without specific permission of sexual deviancy counselor or supervising CCO*; and

(13) Inform CCO of any romantic relationships to verify that there are no minor children involved.[4]

(Emphasis added.) Petitioner challenges only conditions six (6), eight (8), ten (10) and twelve (12).[5]

Petitioner argues the trial court erred in requiring him to submit to polygraph and plethysmograph testing under condition eight (8).[6] He claims the condition constitutes affirmative conduct and is invalid because RCW 9.94A.030(11) expressly excludes affirmative conduct from the definition of "crime-related prohibition.'"[7] Under RCW 9.94A.120(9)(b),.a court is required to sentence the defendant to community placement for two years in addition to other terms of the sentence if the person is sentenced to a term of total confinement for a sex offense committed after July 1, 1990 and before June 6, 1996. "Community placement" is defined by the Sentencing Reform Act as:

[T]hat period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.[8]

There are six conditions of community placement which must be imposed unless waived by the court.[9] Under RCW

---

[4]Clerk's Papers at 34.

[5]Br. of Appellant Riles at 2-3; Pet. for Review at 1-2.

[6]Br. of Appellant Riles at 1.

[7]*Id.* at 4-8.

[8]RCW 9.94A.030(5).

[9]RCW 9.94A.120(9)(b)(i)-(vi). In 1997, the Legislature amended this provision, effective July 27, 1997, adding:

9.94A.120(9)(c) the court may impose additional special conditions:

(c)  As part of any sentence imposed under (a) or (b) of this subsection, the court may also order any of the following special conditions:

(i)  The offender shall remain within, or outside of, a specified geographical boundary;

(ii)  The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

(iii)  The offender shall participate in crime-related treatment or counseling services;

(iv)  The offender shall not consume alcohol;

(v)  *The offender shall comply with any crime-related prohibitions*; or

(vi)  For an offender convicted of a felony sex offense against a minor victim after June 6, 1996, the offender shall comply with any terms and conditions of community placement imposed by the department of corrections relating to contact between the sex offender and a minor victim or a child of similar age or circumstance as a previous victim.[10]

"Crime-related prohibition" is defined as "[a]n order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and *shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct*."[11]

Petitioner Riles contends that submitting to polygraph or plethysmograph testing is affirmative conduct which con-

---

(vii) *The offender shall submit to affirmative acts necessary to monitor compliance with the orders of the court as required by the department.*

(Emphasis added.) LAWS OF 1997, ch. 144, § 2.

[10]RCW 9.94A.120(9)(c) (emphasis added).

[11]RCW 9.94A.030(11) (emphasis added). In 1997, the Legislature amended this provision, effective July 27, 1997, adding: "However, affirmative acts necessary to monitor compliance with the order of a court may be required by the department." LAWS OF 1997, ch. 144, § 1.

stitutes an impermissible crime-related prohibition under RCW 9.94A.120(9)(c)(v) and RCW 9.94A.030(11).[12] The Court of Appeals disagreed and concluded the tests do not prohibit conduct, but are "merely a means to monitor compliance with other community placement conditions."[13]

Petitioner also claims conditions six (6), ten (10) and twelve (12) are unconstitutionally vague and that the "no contact" with children condition is unconstitutionally over-broad.[14] The Court of Appeals rejected those contentions.[15] The Court of Appeals also dismissed Petitioner's argument on overbreadth, noting that the challenged order is expressly authorized by the Sentencing Reform Act and that the offender's "freedom of association may be reasonably restricted."[16] The Court of Appeals affirmed the judgment and sentence.[17] Petitioner Riles sought review by this Court, which was granted on October 7, 1997.

### Richard Lee Gholston

On December 14, 1994, Petitioner Richard Lee Gholston was convicted by a jury in the King County Superior Court of two counts of first degree rape, one count of first degree kidnapping and one count of first degree robbery.[18] The rape victim was a nineteen-year-old woman. The Honorable Richard M. Ishikawa on March 20, 1995 imposed exceptional sentences of 185 months, 110 months and 185 months on counts I, II and III to run consecutively (totaling 480 months) and 102 months on count IV to run concurrently. In addition, the court imposed six mandatory conditions of community placement on Petitioner Gholston

---

[12]Br. of Appellant Riles at 4-8.

[13]State v. Riles, 86 Wn. App. 10, 15, 936 P.2d 11 (1997).

[14]Br. of Appellant Riles at 9-17.

[15]Riles, 86 Wn. App. at 18-19.

[16]Id. at 19.

[17]Id. at 22.

[18]Clerk's Papers 52-53, 78.

under RCW 9.94A.120(9)(b).[19] The court also imposed twelve "special conditions" under RCW 9.94A.120(9)(c), only three of which Petitioner challenges on appeal:[20]

(1) Within thirty days of release from confinement, enter into and *make reasonable progress in mental health counseling, and/or sexual deviancy therapy*, with a therapist approved by your Community Corrections Officer.

(2) *Have no contact with the victim, or the victim's family or any minor-age children* without the approval of your Community Corrections Officer and mental health treatment counselor.

. . . .

(4) *Submit to polygraph and plethysmograph testing* upon the request of your therapist and/or Community Corrections Officer, at your own expense.[21]

(Emphasis added.)

Petitioner challenges condition one (1), contending the court does not have authority to order sex offenders to make "reasonable progress" in treatment and that the order violates procedural due process because it does not provide notice of what constitutes "reasonable progress."[22] In an unpublished opinion the Court of Appeals concluded that requiring a defendant to make reasonable progress was fairly to be read under RCW 9.94A.120(9)(c)(iii), and that Petitioner is not deprived of notice because the order only requires him to actively participate in therapy "as opposed to merely passively attending the therapy sessions without listening or without otherwise making any effort to benefit from the treatment."[23]

Petitioner Gholston challenges condition two (2), arguing

---

[19]*Id.* at 80, 89.

[20]*Id.* at 89-91. Petitioner does not challenge his conviction nor his exceptional sentence.

[21]*Id.* at 90-91.

[22]Br. of Appellant Gholston at 16-21.

[23]*State v. Gholston*, 1997 WL 288938, at *4 (Wash. App. Div. I May 27, 1997).

that the prohibition against contact with "any minor-age children" is invalid because it is not a crime-related prohibition and because it is unconstitutionally vague and overbroad—especially since he was convicted of raping a nineteen-year-old woman and not of raping a minor.[24] The Court of Appeals disagreed and concluded the order of the trial court is not a prohibition under RCW 9.94A.120(9)(c)(v), but instead is based upon subsection (9)(c)(ii), which does not require the condition to be crime-related.[25] The court incorporated by reference its decision in *State v. Riles* to counter Petitioner Gholston's argument on vagueness and overbreadth and rejected Petitioner's claims.[26]

Petitioner Gholston also challenged condition four (4) requiring polygraph and plethysmograph testing, with arguments similar to those made by Petitioner Riles, contending the order requiring him to submit to polygraph and plethysmograph testing is invalid.[27] The Court of Appeals dismissed this claim under the same reasoning it articulated in *State v. Riles*, holding that both tests can be used to monitor compliance with the conditions of community placement.[28]

The Court of Appeals affirmed Petitioner Gholston's conviction and sentence.[29] He then sought review by this Court. Review was granted and the case consolidated with *State v. Riles* on December 2, 1997.

## DISCUSSION

### POLYGRAPH AND PLETHYSMOGRAPH TESTING

The Court of Appeals decisions in both *Riles* and *Ghol-*

---

[24]Br. of Appellant Gholston at 22-27.

[25]*Gholston*, 1997 WL 288938, at *4.

[26]*Id.* at *5.

[27]Br. of Appellant Gholston at 27-30.

[28]*Gholston*, 1997 WL 288938, at *6 (Wash. App. Div. I).

[29]*Id.* at *7.

*ston* upheld the conditions imposed by the trial courts requiring Petitioners to submit to polygraph and plethysmograph testing as part of their community placement following completion of their prison terms. In both cases the court concluded the tests are valid as necessary and effective monitoring tools to ensure Petitioners are in compliance with the conditions of their community placement.[30] In both cases the court stated the testing must be limited in scope to crime-related topics.[31] Petitioners, however, argue this Court should in these cases follow the reasoning of *State v. Holland*,[32] a Division III case which is in conflict with the decisions of the Court of Appeals, Division I.[33]

In *Holland*, Division III determined that polygraph testing requires affirmative conduct and cannot be ordered as a "crime-related prohibition" under RCW 9.94A.120(9)(c)(v) because the definition of "crime-related prohibition" under RCW 9.94A.030(11) prohibits any affirmative conduct.[34] In *State v. Eaton* the Court of Appeals, Division I, addressed the issue and observed that requiring polygraph tests of itself does not constitute a separate condition, but is a "monitoring tool incidental and, perhaps, necessary to a crime-related prohibition."[35] The Court of Appeals in *Riles* agreed with the reasoning in *Eaton* and held that the ban on affirmative conduct under RCW 9.94A.030(11) does not apply in determining whether polygraph testing is valid.[36]

In neither *Eaton* nor *Riles* did the court address the question whether submitting to polygraph or plethysmograph

---

[30]*State v. Riles*, 86 Wn. App. 10, 16, 936 P.2d 11 (1997); *State v. Gholston*, 1997 WL 288938, at *6 (Wash. App. Div. I May 27, 1997).

[31]*Riles*, 86 Wn. App. at 16-17; *Gholston*, 1997 WL 288938 at *6.

[32]80 Wn. App. 1, 905 P.2d 920 (1995).

[33]Pet. for Review (*Riles*) at 6-9; Pet. for Review (*Gholston*) at 14-17.

[34]*Holland*, 80 Wn. App. at 4.

[35]82 Wn. App. 723, 733, 919 P.2d 116 (1996), *implied overruling on other grounds by State v. Frohs*, 83 Wn. App. 803, 811 n.2, 924 P.2d 384 (1996).

[36]*Riles*, 86 Wn. App. at 16.

testing constitutes affirmative conduct. Another Court of Appeals case implied that the purpose of testing, specifically urinalysis, is to monitor compliance with conditions of community supervision.[37] Petitioner Riles agrees, stating "[t]he decisions in *Parramore*, and *Riles*, and the dicta in *Eaton*, correctly recognized that polygraph, urinalysis and Breathalyzer testing are monitoring tools rather than actual conditions of community placement."[38]

Both Petitioners Riles and Gholston, however, argue the trial court did not have authority to impose such monitoring requirements as polygraph and plethysmograph testing because the statutes do not expressly authorize them.[39] Petitioners correctly point out there is no provision in the Sentencing Reform Act of 1981 specifically authorizing or requiring polygraph or plethysmograph testing.[40]

■ As a general matter, in interpreting statutes, the principal objective of the court is to ascertain and carry out the intent of the Legislature.[41] Courts should not construe statutes to render any language superfluous and must avoid strained or absurd interpretations.[42] Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation.[43]

■ On its face, RCW 9.94A.120 is not ambiguous. It may become ambiguous and subject to interpretation when the validity of monitoring requirements imposed by courts is

---

[37]*State v. Parramore*, 53 Wn. App. 527, 532, 768 P.2d 530 (1989).

[38]Supplemental Br. of Pet'r Riles at 11.

[39]Supplemental Br. of Pet'r Riles at 11; Supplemental Br. of Pet'r Gholston at 8-10.

[40]*See generally* RCW 9.94A. However, subsection (C) of RCW 9.94A.120(8)(a)(i), commonly referred to as the "special sex offender sentencing alternative" (SSOSA), mandates "monitoring plans" for offenders under SSOSA.

[41]*State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997).

[42]*Wright v. Engum*, 124 Wn.2d 343, 351-52, 878 P.2d 1198 (1994).

[43]*Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

brought into question. When there are two possible interpretations of an ambiguous statute, the rule of lenity requires that the statute be strictly construed in favor of the criminal defendant.[44] Inflexible application of this rule, however, would undermine the intent of the Legislature and unnecessarily interfere with the objectives of the Sentencing Reform Act of 1981 (SRA), RCW chapter 9.94A.

RCW 9.94A.010 states the purpose of the SRA, which includes, among other things, imposition of just punishment, protection of the public and offering the offender an opportunity for self-improvement. RCW 9.94A.120(9)(b) imposes an additional requirement of mandatory two-year community placement for sex offenders upon their release from prison. The statute specifies six conditions. This is intended to further the purposes of the Legislature stated in RCW 9.94A.010, that is, to protect the public and to offer the offender an opportunity for self-improvement. The Legislature has granted trial courts discretion, within the framework of the structured sentencing guide of the SRA, to impose additional "special" conditions on offenders in furtherance of legislative purpose.[45] The conditions outlined in RCW 9.94A.120(9)(c) seem logically related to protection of victims, potential victims and the general public.

Respondent State argues that "[w]ithout the authority to require an offender to cooperate with supervision by submitting to tests that monitor compliance with the conditions of community placement, the authority to impose such conditions is meaningless."[46] In construing statutes, this Court must ascertain and carry out the intent of the Legislature and avoid strained and absurd results.[47] We must examine the statute as a whole and avoid narrow,

---

[44]*State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996).

[45]RCW 9.94A.120(9)(c).

[46]Supplemental Br. of Resp't State at 6.

[47]*Chester*, 133 Wn.2d at 21; *Engum*, 124 Wn.2d at 351.

overly strict interpretations that defeat the intent of the Legislature.[48]

■ A trial court has authority to impose monitoring conditions such as polygraph testing. Although the results of polygraph tests are generally not admissible in a trial, this Court has acknowledged their validity as an investigative tool.[49] Allowing trial courts to impose polygraph testing on sex offenders is consistent with the guidelines provided in WAC 246-930-310(7)(b) for therapists working with sex offenders:

> The use of the polygraph examination may enhance the assessment, treatment and *monitoring* processes by encouraging disclosure of information relevant and necessary to understanding the extent of present risk and *compliance with treatment and court requirements. When obtained, the polygraph data achieved through periodic examinations is an important asset in monitoring the sex offender client in the community.*[50]

■ In 1997, the Legislature amended RCW 9.94A.030 and 9.94A.120. The title to the amendment reads "AN ACT Relating to assuring compliance with sentence conditions; and reenacting and amending RCW 9.94A.030 and 9.94A.120."[51] In two provisions, RCW 9.94A.030(11) and 9.94A.120(14), new language was added which authorizes a court to order affirmative acts necessary to monitor compli-

---

[48]*State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993); *State v. Clark*, 96 Wn.2d 686, 690, 638 P.2d 572 (1982).

[49]*State v. Sutherland*, 94 Wn.2d 527, 528, 617 P.2d 1010 (1980); *see also O'Hartigan v. Department of Personnel*, 118 Wn.2d 111, 821 P.2d 44 (1991) (upholding statute authorizing polygraph tests of candidates applying for law enforcement positions); *State v. Cherry*, 61 Wn. App. 301, 810 P.2d 940 (court permitted results of polygraph tests to be used to determine existence of probable cause), *review denied*, 117 Wn.2d 1018 (1991); *State v. Dods*, 87 Wn. App. 312, 941 P.2d 1116 (1997) (sex offender in the course of undergoing polygraph tests as condition of sentence revealed sexual abuse of minor).

[50](Emphasis added.) This provision does not purport to give trial courts actual statutory authority to require polygraph examinations.

[51]LAWS OF 1997, ch. 144.

ance with sentencing conditions.[52] Another subsection, (vi), was added to RCW 9.94A.120(9)(b) making mandatory the affirmative acts necessary to monitor compliance with orders of the court.[53] These amendments suggest the Legislature intended to confirm the practice of allowing testing, such as polygraphs, for monitoring compliance with sentencing conditions. Where there has been doubt or ambiguity surrounding a statute, amendment by the Legislature is interpreted as some indication of legislative intent to clarify, rather than to change, existing law.[54] A subsequent amendment can be further indication of the statute's original meaning where the original enactment was "ambiguous to the point that it generated dispute as to what the Legislature intended."[55] One can conclude from these amendments that the Legislature intended to clarify and interpret the statute to resolve any dispute concerning its actual meaning.[56]

■ Plethysmograph[57] testing is regarded as an effective

---

[52]Laws of 1997, ch. 144, §§ 1, 2.

[53]Laws of 1997, ch. 144, § 2.

[54]*Bowen v. Statewide City Employees Retirement Sys.*, 72 Wn.2d 397, 403, 433 P.2d 150 (1967); *State v. Standifer*, 110 Wn.2d 90, 94, 750 P.2d 258 (1988).

[55]*Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 150-51, 736 P.2d 265 (1987).

[56]*See* 1997 Final Legislative Report, S.B. 5519, 55th Legis., Reg. Sess.:

**Summary:** The department is authorized to require an offender to perform affirmative acts, such as drug or polygraph tests, necessary to monitor compliance with crime-related prohibitions and other sentence conditions.

[57]A penile plethysmograph "attempts to measure physiological indications of sexual arousal in response to particular stimulus materials. The individual is placed in a room and a mercury strain gauge is placed around the penis so that the circumference of the penis can be measured . . . [T]his mercury strain gauge is capable of measuring slight increases in circumference many times before they are noticeable to the man himself. The individual is then presented with sequential stimulus materials, auditory and visual, encouraging him to think about and look at materials indicative of sexual activity with different ages of people, different genders and different sexual activities." *State v. King*, 130 Wn.2d 517, 545 n.13, 925 P.2d 606 (1996) (Sanders, J., dissenting) (quoting *State v. Spencer*, 119 N.C. App. 662, 665, 459 S.E.2d 812, 814-15 (1995)).

method for diagnosing and treating sex offenders.[58] It is also known as *phallometry* or *penile plethysmography*. Courts in this and other jurisdictions have authorized plethysmograph tests incident to treatment programs for sex offenders.[59] WAC 246-930-310(7)(c), which announces standards of professional conduct for sex offender treatment providers, generally approves the use of plethysmograph testing:

> The use of physiological assessment measures, such as penile plethysmography, may yield useful information regarding the sexual arousal patterns of sex offenders. This data can be useful in assessing baseline arousal patterns and therapeutic progress.

The trial court imposed upon Petitioner Gholston certain special conditions for his community placement, one of which requires him to undergo "mental health

---

[58]Ron Langevin & R.J. Watson, MAJOR FACTORS IN THE ASSESSMENT OF PARAPHILICS AND SEX OFFENDERS, IN SEX OFFENDER TREATMENT: BIOLOGICAL DYSFUNCTION, INTRAPSYCHIC CONFLICT, INTERPERSONAL VIOLENCE 42 (Eli Coleman et al. eds., The Haworth Press, Inc. 1996) ("In the area of sexual behavior, penile plethysmography is one of the most reliable and valid physiological measures available. Zuckerman (1971) noted that, of all the methods available for measuring sexual interest, penile plethysmography was in a league of its own." *See also* William D. Pithers & D.R. Laws, PHALLOMETRIC ASSESSMENT, IN THE SEX OFFENDER: COLLECTIONS, TREATMENT AND LEGAL PRACTICE, 12-2 (Barbara K. Schwartz & Henry R. Cellini, eds., Civil Research Institute, Inc. 1995):

> Phallometry [penile plethysmograph] is an essential technology in the assessment and treatment of the sexual aggressor. [One expert] stated that any restrictions imposed on a specially trained clinician's ability to employ phallometry in assessing and treating sex offenders "would be analogous to depriving a physician the right to obtain x-rays in cases of bone injuries."

[59]*See Walrath v. United States*, 830 F. Supp. 444 (N.D. Ill. 1993), *aff'd*, *Walrath v. Getty*, 35 F.3d 277 (7th Cir. 1995) (use of plethysmograph for treatment as condition of parole valid); *People v. John W.*, 185 Cal. App. 3d 801, 229 Cal. Rptr. 783, 785 (1986), *implied overruling on other grounds by People v. Stoll*, 49 Cal. 3d 1136, 783 P.2d 698, 708 n.18, 265 Cal. Rptr. 111 (1989) (expert testified that plethysmograph testing for diagnosis and treatment of sex offenders was widely accepted); *Vermont v. Emery*, 156 Vt. 364, 593 A.2d 77 (1991) (noting use of penile plethysmograph in sex offender treatment programs); *see also* the following courts which have authorized plethysmograph testing: *State v. Young*, 125 Wn.2d 688, 888 P.2d 142 (1995); *State v. S.H.*, 75 Wn. App. 1, 877 P.2d 205 (1994), *overruled on other grounds by State v. Sledge*, 83 Wn. App. 639, 645, 922 P.2d 832 (1996); *Rund v. Board of Parole & Post-Prison Supervision*, 152 Or. App. 231, 953 P.2d 766 (1998); *Stowers v. State*, 215 Ga. App. 338, 449 S.E.2d 690 (1994); *Leyba v. State*, 882 P.2d 863 (Wyo. 1994); *Von Arx v. Schwarz*, 185 Wis. 2d 645, 517 N.W.2d 540 (1994).

counseling and/or sexual deviancy therapy, with a therapist approved by . . . [his] Community Corrections Officer."[60] We conclude that requiring plethysmograph testing for Petitioner Gholston incident to his treatment is a valid condition which a court is authorized to impose under RCW 9.94A.120(9)(c)(iii).[61]

Petitioner Riles was also ordered to submit to plethysmograph testing,[62] but he was not required to enter into treatment or therapy.[63] The question then becomes whether the trial court may impose plethysmograph testing without imposing crime-related treatment. Petitioner Riles contends a court cannot impose this testing unless the court orders an offender to undergo crime-related treatment or sentences the offender under the Special Sex Offender Sentencing Alternative (SSOSA).[64]

Petitioner Riles is at least partially correct. It is not permissible for a court to order plethysmograph testing without also imposing crime-related treatment which reasonably would rely upon plethysmograph testing as a physiological assessment measure. Unlike polygraph testing, plethysmograph testing does not serve a monitoring purpose. It is a gauge for determining immediate sexual arousal level in response to various stimuli used as part of a treatment program for sex offenders. Plethysmograph testing serves no purpose in monitoring compliance with ordinary community placement conditions. It is instead a treatment device that can be imposed as part of crime-related treatment or counseling under RCW 9.94A-.120(9)(c)(iii). This is consistent with WAC 246-930--310(7)(c) which states that treatment "[p]roviders shall recognize that plethysmographic data is *only* meaningful

---

[60]Clerk's Papers at 90-91.

[61]This section provides, "The offender shall participate in crime-related treatment or counseling services."

[62]Clerk's Papers at 34.

[63]*Id.*

[64]Supplemental Br. of Pet'r Riles at 13.

within the context of a comprehensive evaluation and/or treatment process." (Emphasis added.)

## No Contact Orders Imposed on Petitioner Riles

Petitioner Riles contends the trial court's order prohibiting him from contact with "any minor-age children" is unconstitutionally overbroad because it infringes upon his right to free speech and free association.[65] The Court of Appeals rejected that argument, concluding the challenged order is authorized by the SRA.[66] RCW 9.94A.120(9)(c)(ii) authorizes the trial court to require offenders "not [to] have direct or indirect contact with the victim of the crime or a specified class of individuals."

The First Amendment prevents government from prohibiting protected speech or expressive conduct.[67] "Overbreadth analysis measures how enactments that prohibit conduct fit with the universe of constitutionally protected conduct."[68] A law is unconstitutionally overbroad if it sweeps within its prohibitions free speech activities protected under the First Amendment.[69] Statutes which regulate behavior, as opposed to speech, will not be overturned unless the overbreadth is both real and substantial in relation to the conduct legitimately regulated by the statutes.[70]

Our first task in overbreadth analysis is to determine whether a statute reaches constitutionally protected speech or expressive conduct.[71] If the answer is yes, the next determination is whether the statute prohibits a real and sub-

---

[65]Pet. for Review at 9-13.

[66]*State v. Riles*, 86 Wn. App. 10, 19, 936 P.2d 11 (1997).

[67]*State v. Halstien*, 122 Wn.2d 109, 121, 857 P.2d 270 (1993).

[68]*City of Tacoma v. Luvene*, 118 Wn.2d 826, 839, 827 P.2d 1374 (1992).

[69]*Id.*

[70]*State v. Walsh*, 123 Wn.2d 741, 750, 870 P.2d 974 (1994).

[71]*Halstien*, 122 Wn.2d at 122.

stantial amount of protected conduct in contrast to the statute's legitimate sweep.[72] This Court has previously noted that the right to move about freely is constitutionally protected.[73] We have previously stated that a "defendant's constitutional rights during community placement are subject to the infringements authorized by the SRA."[74] A convicted defendant's "freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order."[75] Accordingly, although Petitioner Riles' constitutionally protected freedom of movement may be limited, it is a valid restriction because the prohibition is not real or substantial in relation to the conduct legitimately regulated by the statute. That is, RCW 9.94A.120(9)(c)(ii) plainly authorizes this type of prohibition and it does not affect Petitioner's freedom of association apart from the court's order.

Petitioner Riles' argument on overbreadth is without merit. He was convicted of anally raping a six-year-old boy. Prohibiting him from having contact with minor-age children for the period of his community placement upon his release from prison is a reasonable restriction imposed upon him for protection of the public—especially children.

Petitioner Riles also claims the "no contact" condition and the conditions ordering him to "avoid places where [minors] congregate" and "not frequent places where minors are known to congregate" are unconstitutionally vague.[76] The Court of Appeals dismissed this claim and upheld the constitutionality of the conditions, reasoning that "ordinary people can understand what conduct is pro-

---

[72]*Id.* at 123.

[73]*Luvene*, 118 Wn.2d at 840 n.5.

[74]*State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996) (quoting *In re Caudle*, 71 Wn. App. 679, 683, 863 P.2d 570 (1993) (Sweeney, J., concurring)).

[75]*State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974), *cert. denied*, 419 U.S. 1124 (1975)).

[76]Pet. for Review at 13-17.

scribed and the conditions do not invite an inordinate amount of enforcement discretion."[77]

        The due process vagueness doctrine under UNITED STATES CONST. amend. 14, § 1 and CONST. art. I, § 3 has a twofold purpose: (1) to provide the public with adequate notice of what conduct is proscribed, and (2) to protect the public from arbitrary ad hoc enforcement.[78] However, the constitution does not require "impossible standards of specificity" or "mathematical certainty" because some degree of vagueness is inherent in the use of our language.[79] Thus, a vagueness challenge cannot succeed merely because a person cannot predict with certainty the exact point at which conduct would be prohibited.[80] The party challenging the prohibition has the burden of overcoming the presumption of constitutionality.[81]

        Petitioner Riles contends the "no contact" order is vague because there is more than one dictionary meaning for the word "contact."[82] He argues, for example, it could mean "physical touching" but could also mean "association or relationship . . . a condition or an instance of meeting, connecting, or communicating."[83] Obviously any "physical touching" with sexual motivation could be prohibited. It is apparent the sentencing court intended to prohibit "conditions or instances of meeting, connecting, or communication" with a minor because Petitioner Riles was convicted of raping a child. The sentencing court reasonably could prohibit him from having contact with children. The SRA gives sentencing courts authority to order offend-

[77]*Riles,* 86 Wn. App. at 17.

[78]*Halstien,* 122 Wn.2d at 116-17; *City of Seattle v. Huff,* 111 Wn.2d 923, 929, 767 P.2d 572 (1989).

[79]*Halstien,* 122 Wn.2d at 118.

[80]*City of Seattle v. Eze,* 111 Wn.2d 22, 27, 759 P.2d 366, 78 A.L.R.4TH 1115 (1988).

[81]*Halstien,* 122 Wn.2d at 118.

[82]Pet. for Review at 13-15.

[83]*Id.*

ers not to have "direct or indirect *contact* with . . . a specified class of individuals."[84] The other two conditions Petitioner Riles challenges—avoid places where children congregate and not frequent places where minors are known to congregate—also come within the prohibition specified in RCW 9.94A.120(9)(c)(ii). Petitioner claims this prohibition will bar him from all public places.[85] The restriction applies only to places where children commonly assemble or congregate. We conclude the conditions imposed by the trial court limiting Petitioner Riles' access to children are appropriate and within its authority.

## No Contact Order Imposed on Petitioner Gholston

Unlike Petitioner Riles who was convicted of raping a child, Petitioner Gholston was convicted of raping a nineteen-year-old woman. But the trial court ordered him not to have contact with "any minor-age children" as well.[86] Petitioner Gholston makes essentially the same argument as Petitioner Riles and argues the prohibition is unconstitutionally overbroad and vague because it infringes upon his rights to free association and free speech.[87] There is no reasonable relationship between his crime and the order prohibiting his contact with minors. Although the Court of Appeals gratuitously observed the victim was "in her late teen-age years, not so far removed from minority that there is no possibility that her youthful appearance was not a factor in Gholston's choice of her as his victim," we find nothing in the record to support that observation.[88] Although there is no express requirement under RCW 9.94A.120(9)(c) that the special conditions be crime-related, a reading of its subsections indicates that five of the six

---

[84]RCW 9.94A.120(9)(c)(ii).

[85]Pet. for Review at 16.

[86]Clerk's Papers at 90-91.

[87]Pet. for Review at 8-14.

[88]*State v. Gholston*, 1997 WL 288938, at *4 (Wash. App. Div. I May 27, 1997).

conditions are in fact crime-related. Only subsection four (iv), which states the "offender shall not consume alcohol," is not inherently crime-related. RCW 9.94A.120(9)(c)(ii) gives courts authority to order offenders to have no contact with victims or a "specified class of individuals." The "specified class of individuals" seems in context to require some relationship to the crime. It would be logical for a sex offender who victimizes a child to be prohibited from contact with that child, as well as from contact with other children. It is not reasonable, though, to order even a sex offender not to have contact with a class of individuals who share no relationship to the offender's crime.

▮ Although a "defendant's constitutional rights during community placement are subject to the infringements authorized by the SRA," the defendant's freedom of association may be restricted only to the extent it is reasonably necessary to accomplish the essential needs of the state and the public order.[89] In Petitioner Gholston's case, there has been no showing that children are at risk and thus require special protection from him. Because that particular restraint upon Petitioner Gholston's freedom of association bears no reasonable relationship to the essential needs of the state and public order, that portion of the order would prohibit protected conduct and at least borders on unconstitutional overbroadness.[90] Although we conclude the provision is not justified under the facts in Petitioner Gholston's case, we do not see it as an unconstitutional infringement. The simple remedy is to delete the questionable provision from the order. We do not consider it necessary to address the issue of whether the same condition is unconstitutionally vague.

### VALIDITY OF REQUIREMENT FOR REASONABLE PROGRESS IN TREATMENT

▮ Petitioner Gholston next contends the require-

---

[89]*Ross*, 129 Wn.2d at 287; *Riley*, 121 Wn.2d at 37-38.

[90]*Walsh*, 123 Wn.2d at 750.

ment that he make reasonable progress in treatment is not a valid condition because it is not statutorily authorized and because it is unconstitutionally vague.[91] A sentencing court has authority under RCW 9.94A.120(9)(c)(iii) to impose treatment or counseling for sex offenders.[92] Although the words "reasonable progress" are not used, the statute does provide that the offender "shall participate." The word "participate" is not defined, so resort to its ordinary dictionary meaning is appropriate.[93] "Participate" means "to join or share with others . . . [to] take part."[94] An undefined word in a statute can also be given its ordinary meaning.[95] In common usage, the word "participate" means more than merely being present. It requires active involvement. If an offender is not actively participating in treatment, but is merely passively present, treatment cannot be effected. The requirement that Petitioner Gholston make reasonable progress in the treatment program can fairly be read as permissible under the statute.[96] This is our reading.

Petitioner Gholston's vagueness claim has no merit since reasonable progress simply means he must actively participate in the treatment program. The Constitution does not require " 'impossible standards of specificity' or 'mathematical certainty'. . . some degree of vagueness is inherent in the use of language."[97]

## SUMMARY AND CONCLUSIONS

Trial courts have authority to require polygraph testing

[91]Supplemental Br. of Pet'r Gholston at 12-17.

[92]RCW 9.94A.120(9)(c)(iii) provides "The offender shall participate in crime-related treatment or counseling services."

[93]*In re Personal Restraint of Well*, 133 Wn.2d 433, 438, 946 P.2d 750 (1997).

[94]WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 857 (1984).

[95]*Medcalf v. Department of Licensing*, 133 Wn.2d 290, 298, 944 P.2d 1014 (1997).

[96]*State v. Eaton*, 82 Wn. App. 723, 734-35, 919 P.2d 116 (1996).

[97]*State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993).

under RCW 9.94A.120(9)(c) to monitor compliance with other conditions of community placement.

Plethysmograph testing is regarded as an effective method for diagnosing and treating sex offenders. Trial courts may require sex offenders to undergo plethysmograph testing as part of a treatment program imposed under RCW 9.94A.120(9)(c)(iii). However, a sentencing court may not order plethysmograph testing unless it also requires crime-related treatment for sexual deviancy. Unlike polygraph testing, plethysmograph testing does not serve a general monitoring purpose. It is only useful within the context of a comprehensive evaluation or treatment process.

The order prohibiting Petitioner Roland Erik Riles from having contact with minors or frequenting places where they congregate is not unconstitutionally overbroad because "no contact" orders are authorized by RCW 9.94A.120(9)(c)(ii), and a defendant's freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. The same orders are also not vague since persons of common intelligence would understand the conditions prohibiting Petitioner Riles from going to places where children may commonly be found.

The order prohibiting Petitioner Richard Lee Gholston from having contact with minors is questionably overbroad. RCW 9.94A.120(9)(c)(ii) gives courts authority to order offenders to have no contact with victims or with a specified class of individuals. Petitioner Gholston was convicted of raping a nineteen-year-old woman. There is no reasonable relationship between his offense and the provision for no contact with minors. There is nothing in the record to indicate he is a danger to children now or predictably would be upon his release from prison earlier or in thirty or forty years.

A sentencing court has authority to require an offender

to make reasonable progress in mental health or sexual deviancy treatment. The order imposed upon Petitioner Gholston is not vague because reasonable progress simply means an offender must actively participate in the program and cooperate with treatment.

We affirm the decision of the Court of Appeals, Division I, which affirmed the conviction and order of the King County Superior Court imposing community placement conditions upon Petitioner Roland Erik Riles. However, we strike from the Superior Court order the requirement that Petitioner Riles submit to plethysmograph testing upon his release from prison.

We affirm the decision of the Court of Appeals, Division I, which affirmed the conviction and order of the King County Superior Court imposing community placement conditions upon Petitioner Richard Lee Gholston. However, we strike from the Superior Court order the provision prohibiting Petitioner Gholston from having contact with minor-age children upon his release from prison.

DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, and TALMADGE, JJ., concur.

ALEXANDER, J. (concurring in part, dissenting in part) — I agree with the decision of the majority, except in one particular. In my judgment, both trial courts erred in requiring the defendant before them for sentencing to submit to polygraph testing as a condition of community placement. I reach that conclusion because the sentencing court is limited by RCW 9.94A.120(9)(c)(v) to requiring offenders to comply with "crime-related prohibitions." An order requiring a defendant to engage in "affirmative conduct" is not a crime-related prohibition. See RCW 9.94A.030(11).

Submitting to a polygraph test is, in my view, affirmative conduct. In that regard, I entirely agree with the observa-

tion of Division Three of the Court of Appeals in *State v. Holland*, 80 Wn. App. 1, 905 P.2d 920 (1995), to the effect that submitting to a polygraph examination is not passive uncommitted conduct because such an examination requires one to affirmatively respond to numerous questions.

In support of its conclusion that the trial courts had authority to impose polygraph testing, the majority notes the recent amendments to RCW 9.94A.030(11), RCW 9.94A.120(9)(b), RCW 9.94A.120(14). Clearly the thrust of these amendments was to provide authority to sentencing courts to order affirmative acts necessary to monitor compliance with sentencing conditions. By these amendments, the majority suggests, the Legislature was merely confirming the past practice of allowing polygraph testing to assure compliance with sentencing conditions. The logic of that conclusion escapes me because it has the effect of giving retroactive effect to the amendments. This runs counter to the general rule that an amendment to a statute applies prospectively only. *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 832 P.2d 1303 (1992). Although an amendment may apply retroactively if it merely clarifies an older ambiguous statute, there was nothing ambiguous about the aforementioned statutes prior to their amendment. In clear terms they forbade the trial court from ordering offenders to engage in affirmative conduct. We should not give those enactments the back of our judicial hand merely because the Legislature later saw fit to make substantive changes to those statutes after these offenders were sentenced to community placement. *See Magula v. Benton Franklin Title Co.*, 131 Wn.2d 171, 930 P.2d 307 (1997).

SANDERS, J., concurs with ALEXANDER, J.