2014 JUL 28 AM 11: 10


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70146-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDRE LAMAR WATTS, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 28, 2014 |

SCHINDLER, J. — Andre Lamar Watts pleaded guilty to one count of incest in the first degree of his daughter T.D. Watts challenges the community custody condition prohibiting him from having unsupervised contact with minors, including his children. We affirm.

## FACTS

On May 21, 2012, the State charged Andre Lamar Watts with two counts of incest in the first degree of his daughter, date of birth November 22, 1988. The State alleged that between November 22, 2006 and September 30, 2011, Watts engaged in sexual intercourse with his daughter T.D.

On January 10, 2013, Watts pleaded guilty to one count of incest in the first degree of T.D. between November 22, 2006 and September 30, 2011. Watts admitted that "[d]uring a period of time between 11/22/2006 and 9/30/2011, I engaged in sexual

intercourse with a person I knew to be related to me - [T.D.], my descendant." As part of the felony plea agreement, Watts stipulated to the "real and material facts for purposes of this sentencing [as] set forth in the certification(s) for determination of probable cause and the prosecutor's summary."

The plea agreement states that the State will recommend a sentence of 24 months of confinement, 36 months of community custody, entry of a no-contact order prohibiting Watts from contact with T.D., and no contact with "any minors without the supervision of a responsible adult who has knowledge of this conviction and order. Defendant may have supervised contact with his biological children, unless sex offender treatment provider concludes such contact is not in the best interests of his treatment."

Watts filed a presentence memorandum. Watts objected to sexual offender treatment and imposition of a no-contact order prohibiting unsupervised contact with minors. Watts argued that he already underwent sexual deviancy treatment as a condition of his 2009 gross misdemeanor conviction of communicating with a minor for immoral purposes. Watts asserted that because T.D. "was 17 or 18 years old" when the sexual relationship began, there was "no nexus between this case and the imposition of a [no-contact order] with minors." The memorandum states that Watts has four minor children, two minor grandchildren, and regularly sees the minor daughter of his ex-girlfriend. Watts also states that upon his release, he plans to live with his fiancée and her two minor children.

At sentencing, the defense objected to imposition of a no-contact order with minors because Watts could not live with his fiancé and her two children, or see his

2

children. Defense counsel argued, in pertinent part:

> [A]s I laid out in my report, Mr. Watts has several young children and then there's also many other young children that are involved in his life, that he's a part of their life, and he would like to continue to be able to be a part of their life. Now the order that the state's requesting does say, you know, except for -- with a -- you know, adults, who are aware of the charges and they're all aware; all of the individuals in his family are aware of this charge, but the reason we're asking the Court to not impose that order is because in 2009, with the [communicating with a minor for immoral purposes] conviction; the Court imposed an identical order there and although all the adults in his life were aware of that conviction -- of the order, [Washington State Department of Corrections] would not let him live in his home. Because of that order. And so he was homeless for several months, which delayed him from getting a job; delayed him from getting into treatment; that left him no stable residence, no -- no home and stability and that sort of thing and we're asking the Court to not impose an order.

The court imposed a standard-range sentence of 24 months confinement, 36 months of community custody, no contact with T.D., and no unsupervised contact with minors for the maximum term of 10 years. The court in its oral ruling states, in pertinent part:

> A no-contact order will be entered as the state proposes; I don't have a problem with something in it indicating that [Watts] can reside in a home where the other adults are aware of this case and he's to not be left alone with the children. I don't think this is an automatic he can't live in the home with children; he just can't be alone in the home with children.

Section 4.6 of the judgment and sentence provides that Watts cannot have contact with "[a]ny minors without supervision of a responsible adult who has knowledge of this conviction," but that he may reside in a home with minors "if an adult who has knowledge of this conviction resides there" and he is not left "alone with minors in that residence." Section 4.6 provides:

> 4.6 **NO CONTACT:** For the maximum term of 10 years, defendant shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties with: T.D. (DOB: 11/22/88)

3

[ ✓ ] Any minors without supervision of a responsible adult who has knowledge of this conviction. Defendant may have supervised contact with his biological children unless sex offender treatment provider concludes such contact is not in the best interests of defendant's treatment. Defendant may reside in a residence where minors live if an adult who has knowledge of this conviction resides there also but the defendant may not be alone with minors in that residence at any time.
The court is not denying the opportunity for a future motion to modify the no-contact order.[1]

The community custody condition prohibits Watts from having "direct and/or indirect contact with minors" but adds the notation, "See [section 4.6] of judgment and sentence."

## ANALYSIS

Watts contends the court erred by imposing the no-contact order and community custody condition limiting his contact with minors, including his own children. Watts asserts there is no nexus between the crime of incest in the first degree of T.D. and the limitation on contact with minors.

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a court has the authority to impose "crime-related prohibitions" as a condition of a sentence. RCW 9.94A.505(8). " 'Crime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A court may order compliance "with any crime-related prohibitions" as a condition of community custody. RCW 9.94A.703(3)(f). Additionally, a court may order an offender to have no contact with victims or a "specified class of individuals." RCW 9.94A.703(3)(b). The specified class must bear

---

[1] Emphasis in original.

4

some relationship to the crime. State v. Riles, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010).

Whether a crime and a condition of sentence are related " 'will always be subjective, and such issues have traditionally been left to the discretion of the sentencing judge.' " State v. Berg, 147 Wn. App. 923, 942, 198 P.3d 529 (2008) (quoting State v. Parramore, 53 Wn. App. 527, 530, 768 P.2d 530 (1989)), abrogated on other grounds by State v. Mutch, 171 Wn.2d 646, 254 P.3d 803 (2011). Thus, we review the imposition of crime-related prohibitions for abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 299 P.3d 686 (2010); State v. Bahl, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). "Abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." State v. Corbett, 158 Wn. App. 576, 597, 242 P.3d 52 (2010).

Watts relies on Riles to argue the no-contact order and community custody condition are not crime related. In Riles, the sentencing court imposed a special condition of sentence prohibiting the defendant from contact with minors after he was convicted of raping a 19-year-old woman. Riles, 135 Wn.2d at 336-37. The Washington Supreme Court struck down the condition noting, "There is no reasonable relationship between [the defendant's] offense and the provision for no contact with minors. There is nothing in the record to indicate he is a danger to children." Riles, 135 Wn.2d at 352.

Here, unlike in Riles, the undisputed facts establish that T.D. "reconnected" with her "biological father Andre Lamar Watts when she was 17 years of age" and repeatedly

engaged in oral sex and sexual intercourse with Watts between November 22, 2006 and September 30, 2011 while intermittently living with him. The certificate of probable cause states that although T.D. said that sex with Watts "was consensual, she felt that she had been manipulated into having sex with him." Watts's willingness to exploit his relationship with his 17-year-old daughter raises serious concerns about the safety of other minor children. The prohibition on unsupervised contact is reasonably necessary to serve the State's compelling interest in protecting Watts's minor children.

We also reject the argument that the no-contact order restrictions violate Watts's fundamental right to parent his children. "Parents have a fundamental right to raise their children without State interference." Corbett, 158 Wn. App. at 598. "But in criminal cases, a sentencing court may impose limitations on this right when reasonably necessary to further the State's compelling interest in protecting children." Berg, 147 Wn. App. at 942; see also State v. Letourneau, 100 Wn. App. 424, 439, 997 P.2d 436 (2000). A sentencing condition that affects the fundamental right to parent must be "sensitively imposed" so that it is "reasonably necessary to accomplish the essential needs of the State and public order." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

In Corbett, the court held a no-contact order prohibiting the defendant from contact with all minor children was a "valid crime-related prohibition that does not unduly burden [the defendant]'s fundamental parenting rights." Corbett, 158 Wn. App. at 601. In upholding the order, the court concluded the defendant's children were at risk because he acted as a parent to the victim. Corbett, 158 Wn. App. at 600. Likewise, in Berg, the court affirmed an order prohibiting the defendant from unsupervised contact

with female minors. <u>Berg</u>, 147 Wn. App at 943. The victim, a female minor, lived with the defendant and the defendant committed the crime in the home. <u>Berg</u>, 147 Wn. App at 942-43. The court concluded, "An order restricting contact with other female children who lived in the home was therefore reasonable to protect those children from the same type of harm." <u>Berg</u>, 147 Wn. App at 943.

Here, as in <u>Corbett</u> and <u>Berg</u>, because Watts sexually exploited the relationship with his 17-year-old daughter, the no-contact order with minors was reasonable. Further, the court crafted a no-contact order that expressly permits Watts to live with minor children "if an adult who has knowledge of this conviction resides there" and he is not left alone with minors. The judgment and sentence also expressly allows the right to amend the order in the future.

We affirm.

WE CONCUR:

_____
Schindler, J.

_____
Trickey, J.

_____
Lau, J.