IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34636-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ARISTIDES GUEVARA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Aristides Guevara appeals his judgment and sentence for first

degree rape of a child and first degree child molestation. We affirm Mr. Guevara's

convictions and sentence of imprisonment, but remand for modification of his community

custody conditions.

FACTS

Mr. Guevara is the great-uncle of L.A.Z.[1] Mr. Guevara lived with L.A.Z. and her

family for over 10 years and was a trusted and respected family member. In December

2015, L.A.Z., then 13 years old, reported to her youth group counselor that Mr. Guevara

---

[1] To protect the privacy interests of L.A.Z., a minor, we utilize her initials
throughout this opinion. General Order of Division III, *In Re the Use of Initials or
Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012),
http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=
2012_001&div=III.

had been sexually abusing her for years. Mr. Guevara was subsequently charged with two counts of first degree rape of a child and one count of first degree child molestation. Aggravating factors for a pattern of sexual abuse, and abuse of a position of trust, were also charged. The charging period was January 2009 to January 2015. L.A.Z. testified at trial about multiple instances of sexual abuse in that time frame, as well as some instances before and after. During a sidebar conference, defense counsel objected to the inclusion of events outside the charging period but was overruled. The jury found Mr. Guevara guilty on all counts and found the aggravators. The trial court then imposed an exceptional sentence upward of 276 months. Mr. Guevara appeals.

ANALYSIS

*Public trial right—sidebar conference*

Mr. Guevara contends that, during trial, the court improperly conducted an inaudible sidebar conference in violation of his right to a public trial. Mr. Guevara's counsel requested the sidebar to address whether the prosecutor's questions to L.A.Z. fell within the scope of the crime charged. Our review is de novo. *State v. Whitlock*, 188 Wn.2d 511, 520, 396 P.3d 310 (2017).

The factual premise of Mr. Guevara's public trial argument is misplaced. The sidebar at issue in this case was not inaudible. The proceeding was audible to the participants and its contents were transcribed and preserved for public access and appeal.

2

While the sidebar was not audible to the jury, this circumstance is simply a necessary predicate of a proper sidebar. *State v. Smith*, 181 Wn.2d 508, 518, 334 P.3d 1049 (2014). Nothing about the in-court sidebar at issue here indicated it was improper. The sidebar took place within public viewing, it was transcribed to allow full public access, it involved technical legal issues, and it served to address Mr. Guevara's objection without disrupting the flow of trial. *Whitlock*, 188 Wn.2d at 522. There was no public trial violation.

*Double jeopardy—jury instructions*

The federal and state constitutions protect a defendant from multiple punishments for the same offense.[2] *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). A double jeopardy claim may be raised for the first time on appeal. Our review is de novo. *Id.* at 661-62.

Mr. Guevara argues the court's instructions exposed him to the possibility of a double jeopardy violation because the jury might have used the same act of rape of a child as the basis for both convictions. We agree with Mr. Guevara that the jury instructions in this case were flawed. The to-convict instructions do not contain the "separate and distinct" language advised by our case law. *Id*. at 662. Nevertheless, despite the flawed

---

[2] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

instructions, the prosecutor's opening and closing arguments, combined with L.A.Z.'s extensive testimony, make it manifestly apparent the State was not seeking to impose multiple punishments for the same offense.

First, L.A.Z. testified about multiple acts by Mr. Guevara that would qualify as molestation or rape. L.A.Z. described separate and distinct instances where (1) she was made to perform oral sex (in the bathroom), (2) Mr. Guevara engaged in sexual intercourse (once in his van and multiple times in his apartment), and (3) Mr. Guevara performed oral sex on her. All of these acts qualify as "sexual intercourse" as defined by Washington statutes, an element of rape of a child. *See* RCW 9A.44.010(1), .073. L.A.Z. also described multiple instances of inappropriate touching of her breasts and vaginal area by Mr. Guevara that took place in his van, apartment, or at her grandparents' house. These acts qualify as "sexual contact," an element of molestation. *See* RCW 9A.44.010(2), .083. While L.A.Z. did not testify as to the specific dates, it is clear from her testimony that multiple acts of sexual abuse were committed by Mr. Guevara. It is also clear from the testimony that these acts, with the exception of the fondling while waiting for the preschool bus and the last instance of inappropriate touching at L.A.Z.'s grandparents' house, occurred within the time frame of the charged offense conduct.

Further, the prosecutor's opening statement and closing argument clearly explained to the jury it must base each conviction on a separate and distinct act.

4

During opening, the prosecutor told the jury, "I want you to understand exactly what [Mr.

Guevara] is charged with. He's charged with Counts I and II. They're both the same

charge. They're for two separate acts of Rape of a Child in the First Degree. *And what I*

*have to prove to you is that on two separate occasions . . . the defendant had sexual*

*intercourse with this child.*" 2 Verbatim Report of Proceedings (VRP) (June 14, 2016)

at 287 (emphasis added). The prosecutor also explained the difference between the

molestation charge requiring sexual contact alone and the rape charges requiring sexual

intercourse. In closing, the prosecutor explained this to the jury again stating:

> The State of Washington has charged three crimes, but you learned about multiple acts of sexual intercourse. And multiple acts of sexual intercourse, I didn't charge [Mr. Guevara] with twenty counts. I charged him with three.
> *But what that does mean for the thirteen of you, or the twelve of you that will decide the case, is that you have to agree on those separate acts.* So you have to go back there and you have to think about these. Remember there was sex in the bedroom on his bed on Canal. There was sex in his bathroom on Canal, where he put his pants on his penis and where he forced [L.A.Z.] to perform oral sex on him. And oral sex is sexual intercourse.
> It happened in his bedroom in the apartment. If you may remember, he would have sexual intercourse with her there. He also performed oral sex on her there.
> It happened in his van. And there was touching in all of these places. *You all have to, when you find him guilty, you have to go back there and go, okay, so Count I is gonna be the incident where he was in the apartment and he performed oral sex on her and then he penetrated her.*
> *Or it's gonna be the incident inside the bedroom on Canal when he had her watch porn and said let's do the things that they're doing. You have to just agree on which acts.*

5

> *You also can't use the rape acts to find him guilty of the child*
> *molestation.*

4 VRP (June 16, 2016) at 545-46 (emphasis added).

It is manifestly apparent the State was not seeking multiple punishments for the same act. L.A.Z. testified to multiple acts of rape and molestation, and the prosecutor clearly explained at the start and end of trial that the jury must base each conviction on a separate and distinct act. There is no double jeopardy problem.

*Exceptional sentence*

Mr. Guevara argues his exceptional sentence is illegal for three reasons: (1) the trial court made a factual determination that was for the jury to decide, (2) the trial court did not enter written findings and conclusions justifying the exceptional sentence, and (3) the evidence was insufficient to support the jury's finding on the aggravators because the jury was allowed to rely on conduct outside the charging period. Our review is de novo. *State v. Dyson*, 189 Wn. App. 215, 224, 360 P.3d 25 (2015).

We disagree with Mr. Guevara's claim that the trial judge made any improper factual findings prior to imposing an exceptional sentence. The aggravating circumstances relied on by the court were based on jury findings, as required by RCW 9.94A.535(3)(g) and (n). The trial court's determination that the jury's findings justified an exceptional sentence under RCW 9.94A.537(6) did not constitute an

additional finding. *See State v. Suleiman*, 158 Wn.2d 280, 290-91, 143 P.3d 795 (2006)

(whether facts found by the jury are sufficiently substantial and compelling to warrant an

exceptional sentence is a legal conclusion). Instead, this determination was a legal

conclusion. It did not implicate Mr. Guevara's constitutional jury trial rights.

Because the imposition of an exceptional sentence was predicated on written jury

findings, there was little more the court needed to do to satisfy the writing requirements

of RCW 9.94A.535. Given the constitutional restrictions on judicial fact-finding, the only

finding the trial court was authorized to make was to confirm "that the jury has entered by

special verdict its finding that an aggravating circumstance has been proven beyond a

reasonable doubt." *State v. Sage*, 1 Wn. App. 2d 685, 709, 407 P.3d 359 (2017). The

trial court made this finding and placed it in writing. Clerk's Papers (CP) at 129

("Aggravating factors were . . . found by a jury by special interrogatory."). With the

written factual findings in place, the trial court's only remaining task was to determine

whether the aggravating circumstances found by the jury were "'sufficiently substantial

and compelling to warrant an exceptional sentence.'" *Sage*, 1 Wn. App. 2d at 708

(quoting *Suleiman*, 158 Wn.2d at 290-91). Again, the trial court made this conclusion

and appended the special verdict forms to the judgment and sentence. Although the trial

court's conclusions could have been more detailed, this is not required by either statute or

case law. *Cf. State v. Friedlund*, 182 Wn.2d 388, 395, 341 P.3d 280 (2015) (explaining

that written "findings" must be sufficiently detailed to allow for public accountability).

We find no violation of RCW 9.94A.535.

Mr. Guevara last argues that insufficient evidence supports the aggravators

because the jury was not instructed to make its decision on the aggravators based on

events that occurred inside the charging period. He further argues that because the

prosecutor was allowed to introduce evidence of sexual abuse outside of the charging

period, the jury could have made its decision on the aggravators based on facts outside the

charging period.

Mr. Guevara's argument overlooks the prosecutor's arguments as well as the clear

wording of the jury instructions and special verdict forms. The to-convict instructions

each included the charging period of January 2009 to January 2015. This clearly told the

jury it could only convict Mr. Guevara of a crime based on events inside the charging

period. The instructions then went on to tell the jury that if, and only if, it found Mr.

Guevara guilty of the crimes charged it should proceed to determine if the aggravating

factors were present. The instructions reference whether the "crime" involved a pattern

of sexual abuse or abuse of a position of trust. CP at 101-03. The word "crime" in each

instruction refers to the three base charges, each of which were committed inside the

charging period. The jury was asked whether the three base crimes, which occurred

within the charging period, involved the aggravating factors. It necessarily follows the

jury must have based its decision regarding the aggravators on events within the charging period. The wording of the special verdict forms follows this same pattern. The instructions told the jury to keep its decision regarding the aggravating factors within the charging period. Jurors are presumed to follow the court's instructions absent evidence to the contrary. *State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007). Mr. Guevara has no such evidence, only speculation.

*Community custody conditions*

Mr. Guevara challenges three of his community custody conditions. We review the conditions for abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

We accept the State's concessions as to two of Mr. Guevara's conditions:

- The condition stating Mr. Guevara "[s]hall not use or possess any pornographic materials, to include magazines, internet sites, and videos," CP at 139, is unconstitutionally vague. *State v. Bahl*, 164 Wn.2d 739, 753-58, 193 P.3d 678 (2008). It shall be modified to read that Mr. Guevara "shall not use or possess any materials depicting 'sexually explicit conduct,' as defined in RCW 9.68A.011(4), such as magazines, internet sites, and videos."

- The condition stating Mr. Guevara shall "[s]ubmit to polygraphs and or plethysmograph testing upon the request of your therapist and/or supervising Community Corrections Officer, at your own expense," CP at 139, must be limited to monitoring purposes. *State v. Riles*, 135 Wn.2d 326, 340-46, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Valenica*, 169 Wn.2d 782, 239 P.3d 1059 (2010). It shall be modified to require that Mr. Guevara "submit to polygraph testing upon request of your Community Corrections Officer; and if the sexual deviation evaluation recommends treatment, the defendant shall also submit to polygraph and plethysmograph testing in conjunction with such treatment."

The third condition challenged by Mr. Guevara states he shall "[a]void places where children congregate, including parks, libraries, playgrounds, schools, daycare centers and video arcades." CP at 139. Because Mr. Guevara was convicted of sexually abusing an adolescent child, this condition is crime related. In addition, the condition is not unconstitutionally vague. It provides fair warning of proscribed conduct and nothing is left to the discretion of Mr. Guevara's community corrections officer. *Cf. Irwin*, 191 Wn. App. at 652-55. Nevertheless, the condition should be modified to be more definite about what is meant by the term "children." Specifically, the condition should be modified to provide that Mr. Guevara shall "avoid places where children *under 16* are

10

No. 34636-6-III
*State v. Guevara*

known to congregate, including parks, libraries, playgrounds, schools, daycare centers

and video arcades."

CONCLUSION

Mr. Guevara's convictions are affirmed. We remand for modification of the

community custody conditions. Mr. Guevara's request to deny appellate costs is granted,

as the State indicates it will not seek costs.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:


_____       _____
Korsmo, J.                            Lawrence-Berrey, A.C.J.

11