[No. 25533-6-III.   Division Three.   October 30, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. ALVARO G. CASTRO, *Appellant*.

*Dennis W. Morgan*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Julie E. Long, Deputy*, for respondent.

¶1 BROWN, J. — Alvaro G. Castro appeals his second degree child molestation conviction, contending defense counsel was ineffective and the court violated his public trial rights and erred in imposing sentencing conditions. Finding no error, we affirm.

## FACTS

¶2 In 2004, Mr. Castro molested C.S.H., Mr. Castro's wife's granddaughter. The State partly charged Mr. Castro with one count of second degree child molestation.

¶3 During jury voir dire, the jurors responded to questionnaires about any past history of sexual abuse and sexual offenses. The court held an in-chambers hearing to discuss Mr. Castro's decision to waive his right to question the jurors about their answers in open court. The court stated: "These questions that will be asked [of] these individual jurors are private, and the reason we would do it in chambers is to hopefully get a better disclosure from the individuals of the issues that we will question them about." Report of Proceedings (RP) (Voir Dire) at 2. The court

specifically referred to our Supreme Court's decision in *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), when discussing the waiver issue. Defense counsel stated he discussed the matter with Mr. Castro and he wished to waive his right to open proceedings. When asked if this was correct, Mr. Castro responded, "[y]es." RP (Voir Dire) at 3.

¶4 The court questioned the jurors in chambers. Juror 5 responded to questions from the judge and defense counsel by explaining her father had molested her 32 years earlier. She stated she could be an impartial juror. Neither party challenged juror 5 for cause. Jury voir dire resumed in open court following the limited closure.

¶5 During trial, Detective Jose Mireles read Mr. Castro's police statement, in which Mr. Castro told Detective Mireles, "[C.S.H.] spoke to [him] in English, but [he] did not know what she said because [he] d[id] not speak English." RP (June 28, 2006) at 154. Mr. Castro told the detective he "d[id] not read or write the English language." RP (June 28, 2006) at 155. Detective Mireles stated he spoke to Mr. Castro in Spanish.

¶6 On direct examination by the defense, C.S.H.'s sister, G.H., testified that she wrote a letter to her grandmother, Cristy Castro, telling her, " 'I hope that—I hope you're happy that you messed up both of our lives.' " RP (June 28, 2006) at 168. On cross-examination by the State, she testified she wrote the letter to her grandmother because "[she] felt real hurt" that her grandmother "didn't believe [her] sister." RP (June 28, 2006) at 170.

¶7 On direct examination by the defense, Ms. Castro testified she told C.S.H. that "[she] believe[d] [her]." RP (June 28, 2006) at 185. She also testified that Mr. Castro drinks alcohol occasionally, but not regularly, due to a medical condition. C.S.H. testified on cross-examination by the defense that she found liquor bottles in her grandmother's bedroom and thought Mr. Castro was drinking liquor in the house.

¶8 During rebuttal, the State elicited testimony from Michaela Castro, C.S.H.'s aunt, that Mr. Castro would drink, "[n]ot everyday, but he would drink"; that she spoke "Spanglish" with him; and that he could read English. RP (June 26, 2006) at 236.

¶9 The jury convicted Mr. Castro of second degree child molestation. The court sentenced him to 18 months' confinement and 36 to 48 months of community custody. His community custody conditions included: "enter into and make reasonable progress in sexual deviancy therapy," "[s]ubmit to polygraph and plethysmograph testing upon the request of your therapist and/or Community Corrections Officer," and "[d]o not use or have access to the Internet unless approved by [your] sex offender therapist." Clerk's Paper's (CP) at 19-20.

## ANALYSIS

### A. Public Trial

¶10 The issue is whether Mr. Castro properly waived his right of public trial during in-chambers questioning of a juror. We find no error.

¶11 We review constitutional issues de novo. *State v. Jones*, 159 Wn.2d 231, 237, 149 P.3d 636 (2006). A criminal defendant has a constitutional right to a "public" trial, which includes the jury selection process, but that right is not absolute. *Orange*, 152 Wn.2d at 804-05; *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995).

¶12 First, a defendant may choose to waive his constitutional rights, in part or in whole, upon a "knowing, intelligent, and voluntary act[ ]." *State v. Stegall*, 124 Wn.2d 719, 724, 881 P.2d 979 (1994). A defendant may waive his right to a jury trial upon a personal expression of waiver; "no . . . colloquy or on-the-record advice as to the consequences of a waiver is required." *Id.* at 725. The requirements for a valid waiver differ based on the nature of the right at issue. *Id.* at 728-29. The waiver may be oral,

on the record, with either the judge or counsel in colloquy. *Id*. at 728-31.

¶13 Second, a court may close the proceedings, in part or in whole, upon a motion by the prosecutor or the court, without the defendant's assent, after considering the following criteria: a compelling interest, the opportunity for objections, the least restrictive means available to protect the threatened interest, weighing the threatened interest against the public trial right, and tailoring to ensure the narrowest limitation of the threatened interest. *Orange*, 152 Wn.2d at 801-02, 804-07; *Bone-Club*, 128 Wn.2d at 256-59. The record must show the court reviewed the factors. *Orange*, 152 Wn.2d at 811-12; *Bone-Club*, 128 Wn.2d at 260-61. The factors serve to protect both the defendant's public trial rights and the public's constitutional right to open proceedings. *Orange*, 152 Wn.2d at 804-05; *Bone-Club*, 128 Wn.2d at 258-59.

¶14 Here, defense counsel clearly stated he discussed the public trial right with Mr. Castro and Mr. Castro wished to waive his right for the limited purpose of questioning jurors in chambers regarding personal sexual matters. Mr. Castro stated he agreed with defense counsel's statement. Based on this record, Mr. Castro provided a valid limited waiver of his "public" trial rights.

¶15 Further, the court considered the *Orange* factors as to Mr. Castro's rights. The court held an in-chambers hearing and indicated a compelling interest for closing the proceedings to gain better disclosure from the jurors regarding personal sexual abuse and sexual offenses. The court allowed Mr. Castro the opportunity to object, whereby Mr. Castro waived his public trial rights. The court then used the least restrictive means to close the voir dire proceedings solely for that limited purpose. The court properly considered Mr. Castro's public trial rights. Mr. Castro should not be allowed to waive his rights and then appeal an adverse jury verdict, arguing the public was deprived of its right to participate in the hearing; the public has not appealed.

## B. Assistance of Counsel

¶16 The issue is whether Mr. Castro's counsel was effective. Mr. Castro contends his counsel was ineffective in failing to challenge juror 5 for cause and in failing to object to credibility and impeachment evidence. We decide Mr. Castro's counsel was effective.

¶17 We review a claim for ineffective assistance of counsel de novo. *State v. Shaver*, 116 Wn. App. 375, 382, 65 P.3d 688 (2003). We presume defense counsel's performance was reasonable. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). An appellant must first prove deficient performance by showing "defense counsel's [performance] fell below an objective standard of reasonableness." *Id.* at 334. This must be shown based upon the trial record. *Id.* at 335. Strategic or tactical reasons do not support an ineffective assistance claim. *Id.* at 336. Second, an appellant must prove prejudice by showing "a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 335.

¶18 A defendant has a constitutional right to an unbiased jury trial. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001); *City of Cheney v. Grunewald*, 55 Wn. App. 807, 810, 780 P.2d 1332 (1989). When considering a juror's prior experiences, bias is presumed only where the juror fails to indicate he or she can be impartial. *Grunewald*, 55 Wn. App. at 810-11. To protect a defendant's right to an unbiased jury, "[a] witness may not give an opinion as to another witness's credibility." *State v. O'Neal*, 126 Wn. App. 395, 409, 109 P.3d 429 (2005), *aff'd*, 159 Wn.2d 500, 150 P.3d 1121 (2007).

¶19 Evidence is relevant and generally admissible if it has the "tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." ER 401, 402. Character evidence is generally not admissible to prove a defendant

acted in conformity therewith. ER 404(a). "Evidence of a pertinent trait of character [is, however, admissible when] offered by an accused, or by the prosecution to rebut the same." ER 404(a)(1).

¶20 Mr. Castro fails to show deficient performance. First, juror 5 disclosed her personal history upon being questioned by both the court and defense counsel. Juror 5 told the court she could be impartial, even considering her history. It is a legitimate trial strategy not to challenge a juror who states she can be impartial.

¶21 Second, G.H. did not directly testify about C.S.H.'s credibility. She was explaining why she wrote a letter to her grandmother: that she was hurt her grandmother did not believe C.S.H. Even if G.H.'s statement was an indirect statement on C.S.H.'s credibility, the grandmother testified on direct examination by the defense, that she told C.S.H. "[she] believe[d] [her]." RP (June 28, 2006) at 185. Mr. Castro cannot show defense counsel's failure to object to G.H.'s testimony was not a trial strategy intended to discredit the grandmother's possible testimony.

¶22 Third, impeachment evidence related to Mr. Castro's understanding of the English language was relevant in light of his statement to Detective Mireles that he did not understand English, and the State's alcohol impeachment evidence was not improper since it was first raised by the defense.

## C. Sentencing Issues

¶23 The issue is whether the trial court erred in ordering Mr. Castro, as part of his community custody conditions, to "[s]ubmit to polygraph and plethysmograph testing upon the request of [his] therapist and/or Community Corrections Officer," and to "not use or have access to the Internet unless approved by [his] sex offender therapist." CP at 19-20. Mr. Castro contends the court abused its discretion. We disagree.

¶24 We review a trial court's sentence for errors of law or abuses of discretion in deciding what sentence applies. *State v. Kinneman*, 155 Wn.2d 272, 283, 119 P.3d 350 (2005). Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, an individual convicted of second degree child molestation shall be sentenced to community custody, in addition to other sentence terms. RCW 9.94A-.712(1)(a)(i), .715(1). The conditions of community custody may include: "participat[ion] in crime-related treatment or counseling services"; "compl[iance] with any crime-related prohibitions"; "participat[ion] in rehabilitative programs[;] or . . . perform[ance of] affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." RCW 9.94A.700(5)(c), (e), .715(2)(a), .505(8).

¶25 These conditions do not exclude ordering "affirmative acts necessary to monitor compliance with the order of a court." RCW 9.94A.030(13); *State v. Riles*, 135 Wn.2d 326, 342-43, 957 P.2d 655 (1998). Our Supreme Court has ruled these statutes authorize "[a] trial court . . . to impose monitoring conditions such as polygraph testing." *Riles*, 135 Wn.2d at 342, 343. Plethysmograph testing is also a valid condition when ordered incident to crime-related treatment. *Id.* at 343-46. Plethysmograph testing is regarded as a "treatment device" for diagnosing and treating sex offenders. *Id.* at 345, 343-46.

¶26 Here, Mr. Castro concedes the sentencing court properly imposed community custody under RCW 9.94A.715(1). As part of Mr. Castro's sentence, he was ordered to participate in crime-related treatment. Under *Riles*, the court properly imposed polygraph and plethysmograph testing. *Riles*, 135 Wn.2d at 342-46. Mr. Castro's Internet restriction (required to seek permission to use) is also a valid affirmative act under RCW 9.94A.715(2)(a).

¶27 Affirmed.

SWEENEY, C.J., and SCHULTHEIS, J., concur.