# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46721-6-II |
| Respondent, | |
| v. | |
| JAMES ALLEN COCHRAN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — A jury found James Allen Cochran guilty of one count of first degree child rape and three counts of first degree child molestation. Finding no reversible error, we reject Cochran's arguments that (1) the trial court improperly commented on the evidence, (2) the State committed prosecutorial misconduct, (3) the trial court's "reasonable doubt" instruction improperly focused the jury on a search for "the truth," (4) the State elicited improper opinion testimony, and (5) he received ineffective assistance of counsel. In addition, Cochran's arguments relating to juror misconduct in his statement of additional grounds (SAG) also lack merit. Thus, we affirm his convictions.

FACTS

When B.A.[1] was seven and eight years old, she lived with her mother, F.A., her sister, A.A., and F.A.'s boyfriend, Cochran. F.A. worked and frequently left her children under Cochran's care and supervision during the day. It was during these periods of supervision that Cochran inappropriately touched B.A., which resulted in the child rape and molestation charges involving B.A.

B.A. explained that the first time Cochran molested her, she was seven years old, which she knew because it was close to her eighth birthday. B.A. was sitting on the couch with Cochran. B.A. said that Cochran was moving up and down on her "private parts." 1 Report of Proceedings (RP) at 46. Cochran touched B.A. through her clothing. B.A. also recalled the second and third incident in some detail and described them as similar to the first incident. Cochran again touched her through her clothing.

On a later date, Cochran told B.A. and A.A. that he wanted to play a game called "'guess what's in your mouth.'" 1 RP at 54. Cochran first put one of B.A.'s stuffed animals into her mouth. He then put a second, unidentified object into B.A.'s mouth. Cochran told B.A. that the second object he put into her mouth was a remote control, but B.A. was certain that it was not. A day or two later, B.A. inadvertently witnessed Cochran watching pornography. B.A. described

---

[1] *See* Division Two General Order 2011-1 ("in all opinions, orders and rulings in sex crime cases, this Court shall use initials or pseudonyms in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case"). Also, because of the nature of this case, some confidentiality is appropriate. Accordingly, the name of the mother will not be used in the body of this opinion.

having seen a man and a woman engaged in oral sex on the screen. Because of what she saw, B.A. thought she knew what Cochran had put into her mouth the second time.

This incident prompted B.A. to report to her mother what Cochran had done. As a result, F.A. and her children moved out of Cochran's home and a short while later, F.A. reported what had happened to B.A.'s school. B.A. disclosed the instances of Cochran's abuse to her principal, David Roberts. And Roberts reported B.A.'s disclosures to Child Protective Services. B.A. then made the same disclosures to Detective Rick Hughes and Dr. Deborah Hall, the physician who conducted B.A.'s physical examination.

The State charged Cochran with one count of first degree child rape and three counts of first degree child molestation. Along with each charged crime, the State further alleged that Cochran committed the offenses as part of an ongoing pattern of sexual abuse manifested by multiple incidents over a "prolonged period of time." Clerk's Papers (CP) at 31-34.

At trial, in addition to B.A., the State called Detective Hughes, Roberts, and Dr. Hall as witnesses, each of whom testified regarding the disclosures that B.A. made. Detective Hughes described B.A.'s disclosures as "consistent," "graphic," and "articulate." 2 RP at 160. During Detective Hughes's direct testimony, the following exchange occurred:

> [THE STATE]: . . . did you review Dr. Hall's report in this case?
> [DETECTIVE HUGHES]: Yes. . . . I did review her report. Her report was
>     consistent with everybody else's reports.
> [THE STATE]: Did you review Principal Roberts' report?
> [DETECTIVE HUGHES]: I did.
> [THE STATE]: And you have reviewed your taped interview with [B.A.]?
> [DETECTIVE HUGHES]: Yes.
> [THE STATE]: And did you observe [B.A.] testify here in court?
> [DETECTIVE HUGHES]: Yes.
> [THE STATE]: And have all those statements been consistent?
> [DETECTIVE HUGHES]: Yes, they have.

3

2 RP at 185. Defense counsel did not object to this testimony.

After the State and the defense rested, the parties and the trial court discussed the jury instructions. Over Cochran's objection, the trial court gave 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 4.01, at 85 (3d ed. 2008) (WPIC), a version of the "reasonable doubt" instruction that included the language that if the jury had "an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." CP at 115. The trial court also gave the two following instructions, one defining "sexual contact" and one defining "prolonged period of time" for purposes of the sentencing aggravator:

> Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party.
> Sexual contact may occur through a person's clothing.

CP at 124.

> An "ongoing pattern of sexual abuse" means multiple incidents of abuse over a prolonged period of time. The term "prolonged period of time" means more than a few weeks.

CP at 131.

In closing argument, without objection from defense counsel, the prosecutor told the jury,

> If you have an abiding belief -- if you feel it in your mind, in your gut, if you have an abiding belief to the truth of the charge, you are satisfied beyond a reasonable doubt. That's what the law says.

3 RP at 267. The jury found Cochran guilty as charged and answered "yes" to two special verdict forms, including the sentencing aggravator that Cochran had committed a pattern of sexual abuse over a "prolonged period of time." 3 RP at 288-290. Despite the special verdicts, the trial court sentenced Cochran within the standard range. Cochran appeals.

ANALYSIS

I. JUDICIAL COMMENT ON THE EVIDENCE

Cochran argues that the trial court improperly commented on the evidence and thereby relieved the State of its burden to prove sexual contact. We conclude that the instruction defining sexual contact was not an improper judicial comment on the evidence because (1) it was an accurate statement of the law, (2) Cochran was not entitled to additional language in the instruction, and (3) the instruction did not resolve a contested factual issue for the jury.

The Washington State Constitution does not allow judges to "charge juries with respect to matters of fact, nor comment thereon." WASH. CONST. art. IV, § 16. Instead, they "'shall declare the law.'" *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015) (quoting WASH. CONST. art. IV, § 16). A judge is prohibited by article IV, section 16 from "'conveying to the jury his or her personal attitudes toward the merits of the case'" or instructing a jury that "'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). "'A jury instruction that does no more than accurately state the law pertaining to an issue, however, does not constitute an impermissible comment on the evidence by the trial judge.'" *Brush*, 183 Wn.2d at 557 (quoting *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001)). Constitutional issues are reviewed de novo. *State v. Castro*, 141 Wn. App. 485, 490, 170 P.3d 78 (2007).

*Brush* is instructive regarding the type of instruction that constitutes an improper comment on the evidence. There, a jury instruction informed a jury that sexual abuse for a "'prolonged period of time'" meant "'more than a few weeks.'" 183 Wn.2d at 558 (internal quotation marks omitted) (quoting 11A WPIC 300.17, at 719). The *Brush* court concluded that this instruction is

an improper judicial comment on the evidence because the instruction was based on an inaccurate interpretation of the law and because the evidence established that the abuse at issue occurred over a two-month period, it likely affected the jury's finding on the issue. 183 Wn.2d at 559. Consequently, the trial court's instruction there resolved a contested factual issue. *Brush*, 183 Wn.2d at 559.

Here, Cochran does not contend that the trial court's "sexual contact" instruction as given is an inaccurate statement or interpretation of the law. Rather Cochran argues that the trial court's "sexual contact" instruction was an improper judicial comment on the evidence because it did not *further* instruct the jury that additional evidence of sexual gratification is required when a child molestation charge is based on inappropriate touching through clothing.

In support of this proposition, Cochran relies on *State v. Powell*, 62 Wn. App. 914, 816 P.2d 86 (1991). Cochran argues that the trial court's "nonstandard" instruction relieved the State of its burden to prove sexual contact because the instruction informed the jury that it could convict without proof of some additional evidence of sexual gratification, which in Cochran's view is an element of the crime. But Cochran's argument is unpersuasive because, as other divisions of this court have already determined, the *Powell* court did not hold that a jury must be instructed separately that it must find additional evidence of sexual gratification when allegedly inappropriate touching occurs over clothing. *State v. Veliz*, 76 Wn. App. 775, 778-79, 888 P.2d 189 (1995).

In *Veliz*, Division One of this court recognized that *Powell* involved a situation where the trial court was asked to determine whether, as a matter of law, there was sufficient evidence to establish each element of the crime beyond a reasonable doubt, not whether the court had properly instructed the jury. 76 Wn. App. at 778. Rather, the *Powell* analysis suggests that additional

evidence of sexual gratification is sometimes required to survive a claim of insufficiency of the evidence when touching occurs over clothing, but this does not mean that a defendant charged with child molestation is entitled to a separate sexual contact instruction requiring a jury to find that such additional evidence exists. *Veliz*, 76 Wn. App. at 778-79.

Instead, the *Veliz* court concluded that the trial court in a child molestation case properly instructs the jury where it states that sexual contact may occur through clothing but does not inform the jury that additional evidence of sexual gratification is required when that is the case. 76 Wn. App. at 779. So, to the extent that Cochran argues that the trial court improperly commented on the evidence by not further instructing the jury regarding sexual contact in this manner, his argument fails.

Nor did the trial court improperly resolve the contested factual issue of sexual gratification. This is true because the trial court's sexual contact instruction, even absent the language Cochran argues should have been included in the sexual contact instruction, still required the jury to find that the touching was done for purposes of sexual gratification, whether the touching occurred over clothing or not.

We hold that the trial court's sexual contact instruction accurately stated the law and therefore did not constitute an improper judicial comment on the evidence, did not relieve the State

of its burden to prove each element of the charged crime, and did not resolve for the jury whether Cochran acted for purposes of sexual gratification.[2]

## II. PROSECUTORIAL MISCONDUCT

Cochran argues for the first time on appeal that the prosecutor committed misconduct in closing argument by minimizing the State's burden of proof when it urged the jury to convict him if they had a "gut feeling" that Cochran was guilty. Br. of Appellant at 14. We conclude that Cochran cannot demonstrate that those comments were flagrant, ill intentioned, and incurable by instruction. Thus, Cochran failed to preserve this alleged error for our review.

If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

In *State v. Curtiss*, 161 Wn. App. 673, 702, 250 P.3d 496 (2011), under similar circumstances, we concluded that the State's remarks urging the jury to "trust its gut" and references to the jury's heart—to which there was no objection—were not improper misconduct. *Curtiss*, 161 Wn. App. at 702. We held further that, in any event, Curtiss had not shown prejudice

---

[2] Cochran also argues that the trial court improperly commented on the evidence by instructing the jury that "'prolonged period of time'" means "'more than a few weeks.'" Br. of Appellant at 25. We agree. But Cochran recognizes that the trial court did not impose an exceptional sentence and admits that he raises the issue only to prevent reliance on this aggravating factor at any future sentencing hearing. Because we affirm his convictions, we need not address this issue because Cochran will not be resentenced.

because the jury had been instructed to reach a decision "'based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.'" *Curtiss*, 161 Wn. App. at 702. Finally, the court held that Curtiss failed to show that the alleged errors to which she had not objected could not have been cured by an additional instruction. *Curtiss*, 161 Wn. App. at 702.

This same reasoning applies here, because, as in *Curtiss*, there was no objection by defense counsel and the jury was properly instructed. The prosecutor argued that

> [i]f you have an abiding belief -- if you feel it in your mind, *in your gut*, if you have an abiding belief to the truth of the charge, you are satisfied beyond a reasonable doubt. That's what the law says.

3 RP at 267 (emphasis added). This single brief comment came in the middle of a lengthy discussion of the reasonable doubt standard. That discussion included a reminder from the prosecutor that a reasonable doubt is one that would exist in the mind of a reasonable person after fully, fairly, and carefully considering the evidence. And the jury was given an instruction that accurately reflected the State's burden of proof. As in *Curtiss*, the trial court instructed the jury to reach its decision based on facts and law and not on sympathy, prejudice, or personal preference. We presume the jury follows the court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009).

Consequently, even if the prosecutor's remarks were improper, we conclude that Cochran cannot demonstrate enduring prejudice resulting from this brief comment. Nor has Cochran made any appreciable showing that the alleged prejudice could not have been cured by an additional instruction. The trial court could have cured any misunderstanding the jury may have had as it

9

pertains to the proper standard, which was accurately defined in the instructions they received. We hold that Cochran failed to preserve his prosecutorial misconduct argument.

### III. REASONABLE DOUBT INSTRUCTION

Cochran argues that the trial court's jury instruction defining reasonable doubt improperly focused the jury on a "search for the truth." Br. of Appellant at 15. Cochran's argument fails.

We review challenged jury instructions de novo, evaluating them in the context of the instructions as a whole. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995). In *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007), our Supreme Court directed trial courts to exclusively use WPIC 4.01 to instruct juries on the burden of proof and the definition of reasonable doubt. In *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015), the Supreme Court recently reaffirmed that WPIC 4.01 was the proper instruction and "the correct legal instruction on reasonable doubt." Here, the trial court's reasonable doubt jury instruction was identical to WPIC 4.01 which provides in relevant part,

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 115. The trial court included the optional language defining "abiding belief" over Cochran's objection. This "abiding belief in the truth" language specifically has been approved by our Supreme Court. *State v. Pirtle*, 127 Wn.2d 628, 657-58, 904 P.2d 245 (1995).

Cochran, acknowledging that our courts have held that the phrase "abiding belief in the truth" passes constitutional muster, admits that he does not challenge the use of that phrase. Rather, he challenges what he calls the instruction's focus on "the truth." He cites *Emery*, 174

Wn.2d at 760, arguing that the "belief in the truth" language is similar to the impermissible "speak the truth" remarks made by the State during closing argument in that case.

But as the State points out, Division One of this court has previously rejected the specific argument that Cochran makes here, that this "belief in the truth" language encourages the jury to undertake an impermissible search for the truth. *State v. Fedorov*, 181 Wn. App. 187, 199-200, 324 P.3d 784, *review denied*, 181 Wn.2d 1009 (2014). Instead, the "belief in the truth" phrase in the jury instruction "accurately informs the jury its 'job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.'" *Fedorov*, 181 Wn. App. at 200 (quoting *Emery*, 174 Wn.2d at 760).

We hold that the trial court's reasonable doubt instruction, identical to WPIC 4.01, accurately defined reasonable doubt and clearly communicated the State's burden of proof. Accordingly, Cochran's argument fails.

IV. OPINION TESTIMONY

Cochran contends that Detective Hughes's statements that B.A.'s disclosures were consistent is improper opinion testimony that invaded the province of the jury because it bolstered B.A.'s credibility. We hold that Cochran failed to preserve this error for review because he cannot establish that the alleged error is "manifest error."

It is improper for a witness to give an opinion regarding the veracity of another witness. *State v. Demery*, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001). "'[O]pinion testimony'" is "'[t]estimony based on one's belief or idea rather than on direct knowledge of facts at issue.'" *Demery*, 144 Wn.2d at 760 (second alteration in original) (quoting BLACK'S LAW DICTIONARY 1486 (7th ed.1999)); *see State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Important

to the determination of whether opinion testimony prejudices the defendant is whether the jury was properly instructed. *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008).

But where there is no objection to allegedly improper witness testimony before the trial court, a party seeking to raise the issue on appeal must demonstrate that the error is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Kirkman*, 159 Wn.2d at 935. "Manifest" error requires a showing of actual prejudice. *Kirkman*, 159 Wn.2d at 935. "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Kirkman*, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). In the context of improper opinion testimony, "manifest error" requires an explicit or almost explicit statement by a witness that the witness believed the accusing victim. *Kirkman*, 159 Wn.2d at 936. We preview the merits of the claimed constitutional error to determine whether the argument is likely to succeed. *State v Nguyen*, 165 Wn.2d 428, 433-34, 197 P.3d 673 (2008).

In *Kirkman*, our Supreme Court considered whether a doctor had provided improper opinion testimony when he testified at trial that nothing in his physical examination made him doubt (or confirm) what a sexual abuse victim said and that the victim's report of sexual touching was clear and consistent. 159 Wn.2d at 929-30. The court reasoned that a witness or a victim may "clearly and consistently" provide an account that is false and, therefore, the doctor's statements did not constitute an opinion on the victim's credibility. *Kirkman*, 159 Wn.2d at 930. Accordingly, the *Kirkman* court held that the alleged error was not a manifest error of constitutional magnitude. 159 Wn.2d at 930.

Here, the facts are analogous to those in *Kirkman*. The State asked Detective Hughes whether he had reviewed the reports from the other individuals to whom B.A. made disclosures and whether he had reviewed his own interview. When he said that he had, the State asked Detective Hughes whether those reports were consistent regarding the disclosures. Detective Hughes testified that they were consistent. He also referred to B.A. as "consistent," "graphic," and "articulate." 2 RP at 160. But Detective Hughes did not state or even imply that B.A. was truthful or that he believed her. He simply testified that her disclosures had been consistent. As our Supreme Court noted, a victim or witness may make consistent and clear disclosures that are patently false. *Kirkman*, 159 Wn.2d at 930. Thus, Detective Hughes's statements about B.A.'s consistent statements do not equate to an opinion regarding B.A.'s credibility.

We hold that Detective Hughes did not provide improper opinion testimony and, therefore, Cochran fails to show any error, including manifest error affecting a constitutional right. Accordingly, Cochran failed to preserve this error for our review.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Cochran contends that he received ineffective assistance of counsel because counsel failed to object to both the alleged improper opinion testimony and the alleged prosecutorial misconduct in closing argument. We disagree.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *McNeal*, 145 Wn.2d at 362. To establish prejudice, a defendant must show that

13

but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

An appellate court reviews an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable and giving exceptional deference when evaluating counsel's strategic decisions. *Strickland*, 466 U.S. at 689; *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

To show ineffective assistance by failing to object, Cochran must show (1) that failure to object fell below an objective standard of reasonableness, (2) that the objection would likely have been sustained if raised, and (3) that the result of the trial would have been different if the evidence had not been admitted. *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

As explained above, Cochran fails to establish that Detective Hughes provided improper opinion testimony. His statements were not opinions that unfairly bolstered B.A.'s credibility. Therefore, because there was no improper testimony, any objection defense counsel may have made to that testimony would not have succeeded. Consequently, Cochran cannot show that counsel's performance was deficient. Thus, Cochran's argument fails.

Regarding Cochran's argument that counsel was ineffective for failing to object to the alleged prosecutorial misconduct about the jury's "gut feeling" and burden shifting in the State's closing, Cochran again cannot show deficient performance resulting in prejudice. As explained, even if the prosecutor's comments were improper, Cochran fails to establish the prejudice prong because the prosecutor explained that the jury must fully consider the evidence and the trial court instructed the jury to reach its decision based on facts and law and not on sympathy, prejudice, or

personal preference. Consequently, we hold that Cochran's ineffective assistance of counsel argument fails.

## VI. STATEMENT OF ADDITIONAL GROUNDS

In a SAG, Cochran appears to argue that there was potential juror misconduct during his trial. First, Cochran contends that one of the jurors waved at one of F.A.'s family members during the trial. Cochran admits that he does not know what kind of relationship the two individuals had, but implies that it could have had some kind of effect on the rest of the jury. We decline to review this alleged error because there is nothing in the record to suggest that it occurred. *State v McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Second, Cochran appears to argue that an additional instance of juror misconduct occurred when two jurors outside the court building "were talking and pointing at [Cochran] and [his] family" and "were or were not talking about the case." SAG at 1. Regarding this issue, the trial court did make a brief record. There was a short colloquy where the trial court discussed the allegation, asked court staff whether they saw or heard anything, and attempted to identify the jurors involved. No party had seen or heard the alleged exchange and the trial proceeded. We also decline to reach the merits of this claimed error because Cochran fails to identify the nature and occurrence of the alleged error and the record is not sufficiently developed for our review. RAP 10.10(c).

No. 46721-6-II

We affirm Cochran's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

LEE, J.