**FILED**
**AUGUST 31, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38920-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MNASON JUSTIN RANCOURT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Mnason Rancourt appeals his convictions for first degree child molestation and attempted first degree child molestation. We affirm.

## FACTS

Six-year-old O.C., six-year-old A.C., seven-year-old H.C., and ten-year-old C.C.[1] each disclosed—first to parents, then to forensic interviewers—that Mnason Rancourt, their babysitter's boyfriend, had rubbed their genitals.

O.C.'s disclosure came first. After begging her mother not to leave her in the care of Mr. Rancourt and his girlfriend, O.C. told her mother she had been sexually abused by Mr. Rancourt. Her mother then reported this information to law enforcement.

---

[1] To protect the privacy interests of the minor children, we refer to them by their initials throughout this opinion. *See* Gen. Order 2012-1 of Division III, *In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp& ordnumber=2012_001&div=III.

Siblings A.C., H.C., and C.C. are O.C.'s cousins.[2] Like O.C., the three siblings were also babysat by Mr. Rancourt and his girlfriend.

The mother of the siblings learned the general nature of O.C.'s disclosure and became concerned. She talked to each of her children individually. Without sharing what O.C. had reported, she asked the three children if Mr. Rancourt had ever done anything to make them feel uncomfortable. *See* 2 Rep. of Proc. (RP) (Mar. 7, 2022) at 928-29, 932. All three children described being sexually abused by Mr. Rancourt. The three children had not previously discussed the abuse with any adult. However, C.C. had previously asked her younger siblings if Mr. Rancourt had touched either of them. Both A.C. and H.C. responded affirmatively. The mother of A.C., H.C., and C.C. also reported her children's disclosures to law enforcement.

All four children participated in forensic interviews where they described sexual abuse by Mr. Rancourt. The interviews were video recorded.

Mr. Rancourt was arrested and charged with one count of child rape, four counts of first degree child molestation and one count of attempted first degree child

---

[2] The mother of A.C., H.C., and C.C. is a niece of O.C.'s father. *See* 2 Rep. of Proc. (RP) (Mar. 2, 2022) at 554; 2 RP (Mar. 7, 2022) at 914, 925. The sets of cousins are largely unacquainted. *See* 2 RP (Mar. 2, 2022) at 584, 604; 2 RP (Mar. 3, 2022) at 772-73; 2 RP (Mar. 7, 2022) at 937.

molestation. The case was set for trial.

Prior to trial, the State filed a motion seeking to admit child hearsay statements from O.C., A.C., and H.C.[3] pursuant to Washington's child hearsay statute, RCW 9A.44.120.[4] The trial court held a multiday hearing on the issue, which included testimony from all four child witnesses along with other individuals. During cross-examination, the mother of A.C., H.C., and C.C. agreed with defense counsel that she had previously described C.C. as "bossy," the "leader" of her siblings, and wielding "influence" over H.C., and that she had described H.C. as a "follower" who likes to do anything C.C. does. 1 RP (Jan. 12, 2022) at 227-29. For their part, O.C., A.C., and H.C. were all able to answer the prosecutor's questions about the difference between the truth and lies, and adults in their lives described the children as generally truthful, notwithstanding the occasional fib to get out of trouble.

---

[3] Specifically, the State sought to introduce O.C.'s hearsay statements through the testimony of her mother, her grandparents, and the forensic interviewer. The State sought to introduce A.C. and H.C.'s hearsay statements through the testimony of their mother and another forensic interviewer. The State did not seek to admit any out-of-court statements from C.C.; her hearsay statements were not admissible under the child hearsay statute because C.C. was over 10 years old at the time of her disclosure. *See* RCW 9A.44.120(1)(a)(i).

[4] The statute was amended effective July 28, 2019. The 2019 amendment added a subsection not relevant here and did not alter the text applicable to this case. *Compare* RCW 9A.44.120 *with* former RCW 9A.44.120 (1995).

The trial court concluded the children's hearsay statements bore sufficient indicia of reliability and admitted all relevant statements. In its oral ruling, the trial court expressly analyzed all nine of the factors prescribed by *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). The court reduced its oral ruling to a written order, making 75 findings of fact and memorializing its analysis.

At trial, all four children testified and were subject to cross-examination. In addition to other witness testimony, the State presented the video recordings of the forensic interviews of O.C., A.C., and H.C.

In their trial testimony, the four child witnesses described Mr. Rancourt touching their genitals over and under the clothing. During her testimony, O.C. stated Mr. Rancourt told her he was touching her because she was "'cute.'" 2 RP (Mar. 2, 2022) at 617. The evidence included C.C.'s testimony that Mr. Rancourt told her to keep the touching a secret. *See* 2 RP (Mar. 3, 2022) at 794. H.C. testified that while Mr. Rancourt touched her, she asked him to stop, but he refused. *See id.* at 827-28. A.C. demonstrated Mr. Rancourt's touching as a circular rubbing motion. *See* Ex. P-5 at 16 min., 9 sec. through 17 min., 44 sec.

After presentation of evidence, the State moved to dismiss the rape charge. The jury found Mr. Rancourt guilty of the remaining counts.

Mr. Rancourt was sentenced to indeterminate confinement of 149 months to life.

The trial court also imposed lifetime community custody as part of Mr. Rancourt's

sentence, and ordered a condition—community custody condition 15—requiring Mr.

Rancourt to "submit to polygraph testing to ensure compliance" with other conditions of

his sentence. Clerk's Papers (CP) at 263; *see also* 3 RP (May 6, 2022) at 1200.

Mr. Rancourt timely appeals.

## ANALYSIS

*Sufficiency of the evidence*

Mr. Rancourt argues his convictions must be overturned with prejudice because

the State failed to elicit sufficient evidence that he touched O.C., A.C., H.C., and C.C. for

the purpose of sexual gratification. This is a definitional requirement for a first degree

child molestation conviction. *See* RCW 9A.44.083(1)[5] (first degree child molestation

requires proof of "sexual contact"); RCW 9A.44.010(13)[6] (defining "sexual contact" as

---

[5] This statute was amended, effective April 26, 2021. The amendment deleted an exception, not relevant here, that required a child molestation victim not be the offender's spouse. We cite the current version of the statute because the language relevant to Mr. Rancourt's challenge remains the same. *Compare* RCW 9A.44.083(1) *with* former RCW 9A.44.083(1) (1994).

[6] At the time of Mr. Rancourt's charged conduct, this definition was found under former RCW 9A.44.010(2) (2007). We cite the current definition because it has simply been renumbered. The definition itself remains unchanged.

"any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party").

When reviewing a sufficiency challenge we are "highly deferential" to a jury's decision. *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion). The issue is not whether we would reach the same verdict as the jury. Rather, the question is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

The evidence presented at trial amply supports the inference Mr. Rancourt touched the children for the purpose of sexual gratification. Although they unsurprisingly used age-appropriate anatomical euphemisms, all four children testified Mr. Rancourt purposefully touched their genital areas. According to the testimony, Mr. Rancourt's actions were not fleeting and they involved rubbing motions, which are indicative of sexual motivation. *See State v. Harstad*, 153 Wn. App. 10, 22-23, 218 P.3d 624 (2009).

Additional circumstantial evidence supports an inference that Mr. Rancourt's conduct was sexually motivated. In all cases, "the touching occurred . . . in a place where he and the [children] would not be easily observed" by Mr. Rancourt's girlfriend, the

adult responsible for the children's supervision. *State v. Wilson*, 56 Wn. App. 63, 69, 782 P.2d 224 (1989). Furthermore, Mr. Rancourt's statements that he touched O.C. because she was cute, his instructions to keep his actions a secret, and his refusal to stop when asked all support the inference that Mr. Rancourt was acting for the purpose of sexual gratification. *See Harstad*, 153 Wn. App. at 22-23 (inferring purpose of sexual gratification from defendant's heavy breathing and whisperings); *State v. T.E.H.*, 91 Wn. App. 908, 916, 960 P.2d 441 (1998) (inferring sexual motive because "[w]hen told to stop, [the defendant] continued").

While Mr. Rancourt argues that he was engaged in a babysitting role because he assisted his girlfriend with supervision of the children, this does not undermine the strength of the State's proof. Inadvertent contact with a child's genitalia can sometimes be an innocuous part of childcare duties. However, Mr. Rancourt's conduct did not meet this description. Mr. Rancourt was not responsible for bathing the children, changing diapers, or helping the children change clothes. The fact that Mr. Rancourt had accompanied his girlfriend to her babysitting job did not excuse him for purposefully rubbing the children's genitalia. *See Harstad*, 153 Wn. App. at 23 (rejecting a similar argument because defendant was never engaged in "the kind of caretaking that requires close contact with an unrelated child's intimate parts").

Mr. Rancourt's additional criticisms of the State's proof—such as his claim

the children were clothed, there was no penetration, and there was no corroborating

physical evidence—all lack legal merit. Contact with a child's intimate parts over

clothing can be sufficient to sustain a finding of sexual gratification, so long as there is

additional evidence of sexual intent. *See id.* at 21.[7] Proof of penetration is not required for

a charge of child molestation, as opposed to child rape. *Compare* RCW 9A.44.083 *and*

RCW 9A.44.010(13) *with* RCW 9A.44.073 *and* RCW 9A.44.010(14). And the validity of

a victim's allegation does not turn on the existence of corroborating physical evidence.

*See* RCW 9A.44.020(1); *State v. Jennen*, 58 Wn.2d 171, 179, 361 P.2d 739 (1961).

Sufficient evidence supports Mr. Rancourt's convictions.

*Child hearsay*

Mr. Rancourt contends the trial court erred by admitting out-of-court statements

under RCW 9A.44.120, Washington's child hearsay statute. Although he does not

assign error to any of the trial court's 75 factual findings, he argues the child witnesses'

---

[7] Furthermore, there was evidence Mr. Rancourt touched C.C., H.C., and O.C. under their clothing.

statements[8] were not reliable under the factors prescribed by *Ryan.* 103 Wn.2d at 175-76.

Specifically, Mr. Rancourt claims C.C. influenced her younger siblings to lie and that the

six months between the alleged touching and A.C. and H.C.'s disclosures rendered the

disclosures untrustworthy.

Where, as here, the child witnesses testify at trial, admissibility of statements under

the child hearsay statute turns on reliability. *State v. Woods*, 154 Wn.2d 613, 623, 114

P.3d 1174 (2005) (plurality opinion).[9] Nine nonexclusive factors govern the reliability

analysis. Known as the *Ryan* factors, they are:

> (1) whether there is an apparent motive to lie[,] (2) the general character of
> the declarant[,] (3) whether more than one person heard the statements[,]
> (4) whether the statements were made spontaneously[,] . . . (5) the timing of
> the declaration and the relationship between the declarant and the witness[,]
> . . . [(6) whether] the statement contains [any] express assertion about past
> fact, [(7) whether] cross[-]examination could . . . show the declarant's lack

---

[8] Mr. Rancourt assigns error to the trial court's admission of child hearsay statements of C.C. and H.C. *See* Appellant's Opening Br. at 2. However, the trial court did not admit any hearsay statements of C.C. pursuant to RCW 9A.44.120, nor could it have. C.C. was over 10 years old when she made the statements, taking her statements out of the statute's coverage. RCW 9A.44.120(1)(a)(i). Rather, the trial court admitted hearsay statements of O.C., A.C., and H.C. *See* CP at 167. Despite his assignment of error only mentioning C.C. and H.C., Mr. Rancourt also complains in his argument section about the admission of A.C.'s statements. *See* Appellant's Opening Br. at 26-27. The discrepancy is irrelevant because, as we explain below, we find no abuse of discretion in the trial court's admission of *any* of the child hearsay statements.

[9] Mr. Rancourt alludes to confrontation principles in his brief. But because all child victims testified and were subject to cross-examination, this case "does not present a confrontation clause issue." *State v. Price*, 158 Wn.2d 630, 650, 146 P.3d 1183 (2006).

of knowledge, [(8) whether] the possibility of the declarant's faulty recollection is remote, and [(9) whether] the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

103 Wn.2d at 175-76 (citing *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982) and *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970)).

Reviewed for abuse of discretion, *see State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990), we affirm the trial court's assessment of reliability under the *Ryan* factors. As recognized by the trial court, none of the child witnesses had an apparent motive to tell lies about Mr. Rancourt, nor did any of the children have general reputations for dishonesty. Although H.C.'s mother admitted H.C. had at times been dishonest about trivial things and was susceptible to the influence of C.C.—who their mother described as "bossy"—such behaviors were not out of the ordinary for a child of H.C.'s age. There was no testimony impugning the children's general character: witnesses uniformly testified the children were generally trustworthy and the children themselves demonstrated they "understood the concept of truth." *State v. Ramirez*, 46 Wn. App. 223, 231, 730 P.2d 98 (1986); *see also Woods*, 154 Wn.2d at 624 (child declarant's reliability bolstered where child has "a normal memory and ability to perceive").

Nor was there any indication that the children or any other family members harbored negative feelings toward Mr. Rancourt prior to the abuse.[10] The children's statements were spontaneous, in that they were responses to questioning that was "neither leading nor suggestive." *State v. Henderson*, 48 Wn. App. 543, 550, 740 P.2d 329 (1987); *see State v. Kennealy*, 151 Wn. App. 861, 883, 214 P.3d 200 (2009) (holding child's statements were spontaneous where father's questioning of child did not suggest the child should respond affirmatively to father's question, "'[did] he touch you?'"). In addition, the stories the children relayed to the forensic interviewers were consistent with the stories they previously told their parents, and the children's disclosures "took place in . . . trusting [and] clinical atmosphere[s]." *Kennealy*, 151 Wn. App. at 884; *see id.* at 883 (noting a child's out-of-court statements are more reliable when a child tells "a similar story of abuse" to "more than one person").

The trial court had the opportunity to observe the child declarants and hear them testify in person. This court on review did not. As such, "the trial court [was] in the best position to make the decisions as to [their] competency and credibility." *Swan*, 114 Wn.2d at 667. Mr. Rancourt has provided no reason for this court to abandon its usual practice of

---

[10] The trial court found O.C., A.C. and H.C. "all had a positive relationship with" Mr. Rancourt and his girlfriend. CP at 159.

11

deference and upend the trial court's determination that the children's out-of-court statements were reliable. The trial court properly concluded the *Ryan* factors were substantially met. *See Woods*, 154 Wn.2d at 623-24. We therefore affirm the decision to admit the out-of-court statements.

*Community custody condition 15*

Mr. Rancourt apparently contends the trial court's imposition of community custody condition 15 is unconstitutional. In his brief, Mr. Rancourt purports to quote condition 15 as requiring "polygraph and/or plethsmograph [sic] testing." Appellant's Opening Br. at 28 (quoting CP at 145-46). But this language is not found on the pages he cites, nor is it found on any other page of the record. As the State correctly notes, the trial court did not order Mr. Rancourt to undergo plethysmograph testing. Community custody condition 15 requires Mr. Rancourt to "submit to *polygraph* testing to ensure compliance" with other conditions of community custody. CP at 263 (emphasis added).[11]

---

[11] A plethysmograph is a gauge placed on the penis and used to measure bloodflow as a proxy for sexual arousal while the subject is shown various stimuli. *See State v. Riles*, 135 Wn.2d 326, 343 n.57, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010). In contrast, a polygraph is "[a] piece of equipment used to determine whether someone is lying," usually by measuring heart rate. BLACK'S LAW DICTIONARY 1403 (11th ed. 2019). Polygraph testing is permissible as a routine monitoring condition, while plethysmography is a valid condition only when ordered incident to crime-related treatment. *See State v. Castro*, 141 Wn. App. 485, 494, 170 P.3d 78 (2007).

No. 38920-1-III
*State v. Rancourt*

Because the trial court did not impose plethysmograph testing, we need not further address Mr. Rancourt's arguments regarding his community custody conditions.

CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, J.

_____
Siddoway, J.P.T.[12]

---

[12] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.